VERLAN, LTD., Plaintiff,

v.

JOHN L. ARMITAGE & CO., Defendant.

JOHN L. ARMITAGE & CO., Counter-plaintiff,

v.

VERLAN, LTD., Counter-defendant.

No. 87 C 5121.

United States District Court, N.D. Illinois, E.D.

Sept. 6, 1988.

Michael W. Rathsack, Chicago, Ill., for plaintiff.

Andrew H. Perellis, Thomas M. Giller, Mark Hester, Gessler, Flynn, Laswell, Fleischmann, Hughes & Socol, Ltd., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

## CROSS–MOTIONS FOR SUMMARY JUDGMENT

CONLON, District Judge.

Plaintiff insurer Verlan, Ltd. ("Verlan") filed this declaratory judgment action against its insured, John L. Armitage & Co. ("Armitage"). Jurisdiction is predicated on diversity. 28 U.S.C. § 1332. Verlan seeks a declaration that it is not obligated to provide coverage, either defense or indemnity, in the case of *Allied Corp., et al. v. Acme Solvents Reclaiming, Inc., et al.*, No. 86 C 20377 (N.D.Ill. filed October 24, 1986) (the *"Allied action"*).[1] Armitage filed a counterclaim seeking a declaratory judgment that Verlan must defend and indemnify in the *Allied* action.[2] Verlan moves for summary judgment on the complaint. Armitage moves for summary judgment on Counts I, II and IV of the complaint and on its counterclaim. For the reasons set forth below, Verlan's motion for summary judgment is granted, and Armitage's motion for summary judgment is denied.

**1.** Verlan seeks a declaration that (1) an action to recover clean-up costs seeks equitable relief rather than damages and is not covered under the policy (Count I); (2) removal of contaminated soil does not constitute "property damage" under the policy (Count II); (3) no property damage occurred during the effective period of the policy (Count III); and (4) coverage is

## BACKGROUND

Verlan is an insurance company. Armitage manufactures paint products at its plant in Elk Grove Village, Illinois. Between 1960 and 1972, Acme Solvents Reclaiming, Inc. ("Acme") disposed of the by-products of Armitage's manufacturing operations at a waste-disposal site located south of Rockford, Illinois (the "site"). On June 30, 1972, the Illinois Pollution Control Board ("IPCB") closed down the site. In September, 1972, the IPCB ordered Acme to remove all drums and wastes from the facility. Allegedly, Acme never did so.

In 1979, Verlan and Armitage entered into a standard form, Comprehensive General Liability ("CGL") policy and an accompanying umbrella policy (collectively, the "policy") for the period December 31, 1979 through December 31, 1980. The policy provides that Verlan will indemnify Armitage for damages resulting from personal injury or property damage caused by an occurrence during the policy period. Further, the policy obligates Verlan to defend Armitage against any suit for damages that is potentially covered by the policy.

Between 1981 and 1983, the Environmental Protection Agency ("EPA") conducted studies at the site to determine the source and extent of contamination. In 1983, the site was placed on the EPA's "National Priorities List." In 1983 and 1984, the EPA notified generators of the waste of their potential liability under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601 *et seq.* and sought to compel them to remediate the contamination. A group of companies attempted to remedy the damage at the site and subsequently brought suit against Armitage, among others, for contribution to the costs

barred by the pollution exclusion clause or Armitage's failure to provide timely notice (Count IV).

**2.** The counterclaim purports to allege claims for breach of contract (Count I), breach of fiduciary duty (Count II), and intentional tort (Count III). In a companion order, this court dismisses Counts II and III of the counterclaim for failure to state a claim upon which relief could be granted.

of the remedial action.[3] *See Allied Corp., et al. v. Acme Solvents Reclaiming, Inc., et al.,* No. 86 C 20377 (N.D.Ill. filed October 24, 1986).

This case raises the controversial issue of liability for the enormous government-mandated clean-up costs associated with hazardous waste. Armitage claims that Verlan must defend and indemnify it in the *Allied* action pursuant to the "all risk" CGL policy that Verlan issued. Verlan maintains that it is not obligated either to defend or indemnify Armitage under the policy for the costs of the remedial action. Verlan's duty to provide coverage presents a question of law that is properly resolved by the parties' cross-motions for summary judgment. Fed.R.Civ.P. 56(c).

## DISCUSSION

### Choice of Law

▮ In diversity actions, the court applies the substantive law of the forum state, including its rules governing choice of law. *International Administrators, Inc. v. Life Insurance Co. of North America,* 753 F.2d 1373, 1376-77 (7th Cir.1985). This case arises in connection with coverage under an insurance policy. In construing an agreement, Illinois courts either honor the parties' choice of law as expressed in the agreement or apply the law of the forum that has the most significant contacts with the transaction and parties. *Illinois Tool Works v. Sierracin Corp.,* 134 Ill.App.3d 63, 89 Ill.Dec. 40, 479 N.E.2d 1046 (1st Dist.1985). Conflicts rules are applied only when a difference in law makes a difference to the outcome; when there is no disagreement among the contact states, which include the forum state, the court applies the law of the forum state. *International Administrators, supra,* 753 F.2d at 1376 n. 4.

The policy does not contain a choice of law provision. The policy was executed at Armitage's corporate headquarters in New Jersey. It was to be performed in several states where Armitage maintains its operating facilities, including Illinois. This case implicates Verlan's coverage obligations in connection with a lawsuit filed in Illinois, involving clean-up of property located in Illinois.

Armitage believes that Illinois law should apply, to the extent that it does not conflict with New Jersey law. *See* Armitage's Memo. in Support of its Motion for Partial Summary Judgment at 3 n. 2. Verlan apparently concedes that Illinois law applies because it advocates the position of the Illinois courts on the relevant issues. *See* Verlan's Memo. in Opposition to Armitage's Motion for Partial Summary Judgment at 10-12. Because the parties agree that Illinois has the most significant contacts with the transaction and parties, Illinois law shall govern the resolution of these motions.

### Cross-Motions for Summary Judgment

On January 21, 1988, Armitage moved for partial summary judgment on Counts I, II and IV of the complaint and on its counterclaim. On April 11, 1988, Verlan filed a memorandum in opposition to Armitage's motion, as well as its own motion for summary judgment on the complaint. The motions involve construction of the identical contract terms. Armitage seeks a declaration that Verlan breached its duty to defend Armitage in the *Allied* action and a declaration interpreting certain terms of the policy and their effect on Verlan's obligation to provide coverage. Verlan seeks a declaration that it owes no coverage obligations to Armitage, either to defend or indemnify, in connection with the *Allied* action.

A party is entitled to summary judgment where the pleadings, depositions, answers to interrogatories and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Only disputes over facts that might affect the outcome of the suit under governing law will preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505,

---

**3.** The *Allied* action was brought pursuant to § 107(a) of CERCLA; subsection (a)(4)(B) permits private parties to seek recovery of response costs. 42 U.S.C. § 9607(a).

2510, 91 L.Ed.2d 202 (1985). The court must determine whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Id.* at 252, 106 S.Ct. at 2512.

### Verlan's Duty to Defend

Verlan has refused to provide Armitage with a defense in the *Allied* action while it pursues this declaratory judgment action. Armitage maintains that Verlan must defend until coverage issues are resolved because the claims asserted against Armitage in the *Allied* action are potentially within the coverage of the policy.

The policy contains the following indemnification provision:

> The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay *as damages* because of . . . bodily injury or property damage.

Comprehensive General Liability Insurance Policy, Coverage Part, page 2 (emphasis added). In addition to indemnification, Verlan owes Armitage a duty to defend as follows:

> [T]he Company shall have the right and duty to defend *any suit against the Insured seeking damages* on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient. . . .

*Id.* (emphasis added).

Under Illinois law, where an insurer owes a duty to defend, it must defend any claim that might possibly fall within the scope of the policy coverage, even if the claim is later determined to have no merit as a matter of law. *Reis v. Aetna Casualty and Surety Co. of Illinois*, 69 Ill.App.3d 777, 25 Ill.Dec. 824, 387 N.E.2d 700 (1st Dist.1979). If an insurer with a duty to defend believes a policy does not provide coverage, it may either secure a declaratory judgment as to its rights and obligations before or pending trial of the underlying action or defend under a reservation of

rights. *Id.* 25 Ill.Dec. at 828, 387 N.E.2d at 704. An insurer may safely and justifiably refuse to defend only when the allegations of an underlying claim clearly show on their face that the claim is beyond policy coverage. *La Rotunda v. Royal Globe Ins. Co.*, 87 Ill.App.3d 446, 42 Ill.Dec. 219, 224, 408 N.E.2d 928, 933 (1st Dist.1980). Therefore, if the claims in the *Allied* complaint are not within the scope of coverage, Verlan did not breach its duty to defend.

### Coverage Under the Policy

Under the policy, Verlan agreed to indemnify Armitage for sums that it became legally obligated to pay "as damages" because of bodily injury or property damage; it further agreed to defend any suit against Armitage "seeking damages" for bodily injury or property damage. Comprehensive General Liability Insurance Policy, Coverage Part, p. 2. Verlan argues that there is no coverage because (1) the policy is limited to claims for damages and does not include claims seeking restitutional relief, and (2) remedial costs to restore real property to its uncontaminated condition do not constitute property damage under the policy. Verlan's Complaint ¶¶ 26–31. Armitage maintains that the recovery costs sought in the *Allied* action constitute "damages" within the meaning of the policy. Armitage's Motion for Partial Summary Judgment ¶ 4.a.

In construing an insurer's duty to defend the insured under an insurance contract, courts generally distinguish damage claims from equitable claims. Damages are remedial, pecuniary and intended to compensate for injury suffered. In contrast, restitution restores plaintiff's property to its former state, but does not remedy the injury sustained and involves no monetary gain to the injured parties. *Ladd Construction Co. v. Ins. Co. of North America*, 73 Ill. App.3d 43, 29 Ill.Dec. 305, 309, 391 N.E.2d 568, 572 (3d Dist.1979). Where a complaint is devoid of allegations or prayers for relief that would establish a right to damages, and an insurance company is obligated to defend its insured only against claims seeking damages, there is no duty to defend. *Id.; see also Aetna Casualty & Surety Co.*

*v. Hanna,* 224 F.2d 499, 504 (5th Cir.1955) (liability insurer has no duty to defend or indemnify insureds in suit seeking injunction; cost of complying with order compelling insured to remove material from claimant's land to prevent further injury did not constitute "damages" within terms of policy).

■ Claims in connection with government-mandated clean-up costs present a timely question of law in an era of emerging liability for environmental contamination. Although the decisions are far from unanimous, the majority of cases have refused to shift the responsibility to the insurer under the terms of a standard CGL policy. These cases have soundly reasoned that cost recovery claims under CERCLA do not seek damage relief, but are restitutional in nature.[4] *See International Mineral & Chemical Company v. Liberty Mutual Insurance Co., et al.,* No. 84 L 50979 (Ill.Cir.Ct. of Cook Cty. Jan. 21, 1987), *aff'd on other grounds,* 168 Ill.App.3d 361, 119 Ill.Dec. 96, 522 N.E.2d 758 (Ill.App.1988) (in coverage action against general liability insurers, restitutional cost-recovery claims against insured are not damages); *Maryland Casualty Co. v. Armco,* 822 F.2d 1348 (4th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 703, 98 L.Ed.2d 654 (1988) (under Maryland law, cost recovery claims under § 107 of CERCLA seek a form of equitable remedial relief, rather than damages; "damages" do not include expenditures that result from complying with directives of regulatory agencies; *Mraz v. Canadian Universal Insurance Co., Ltd.,* 804 F.2d 1325 (4th Cir.1986) (response costs under CERCLA sought by United States and the State of Maryland are not "property damages"; claim for response costs under CERCLA § 107(a)(4)(A) must be distinguished from cause of action for damages for injury to natural resources provided by CERCLA § 107(a)(4)(C)); *Continental Insurance Cos. v. Northeastern Pharmaceutical & Chemical Co., Inc., et al.,* 842 F.2d 977, 986 (8th Cir.1988) (*en banc*) (expansive reading of the term "damages" to include response costs would render the policy term "all sums" meaningless). *Travelers Ins. Co. v. Ross Electric of Washington, Inc.,* 685 F.Supp. 742 (W.D. Wash.1988) (clean-up costs are not damages covered under standard liability insurance policies). *Protective Nat'l Ins. Co. v. Union Oil Co.,* No. C–514–463, slip op. at 15 (Cal.Super.Ct. Los Angeles Co. Nov. 24, 1987) (cost recovery claims under CERCLA are not claims for "damages" within the policy).

The narrow construction of the term "damages" is consistent with the statutory scheme of CERCLA, which differentiates between clean-up costs and damages. Clean-up or response costs are recoverable by the government or by private parties. 42 U.S.C. § 9607(a)(4)(A), (B). Additionally, the government may sue for "damages for injury to, destruction of, or loss of natural resources...." 42 U.S.C. § 9607(a)(4)(C).[5]

---

**4.** But see *Fireman's Fund Insurance Cos. v. Ex-Cell-O Corp.,* 662 F.Supp. 71 (E.D.Mich.1987) (comprehensive general liability policies provide coverage for clean-up costs incurred under compulsion of law regardless of the nature of relief sought); *New Castle County v. Hartford Acc. and Indem. Co.,* 673 F.Supp. 1359 (D.Delaware 1987) (claims against insured for injunctive and other equitable relief constituted "damages" within coverage of policies); *Sharon Steel Corp. v. Aetna Casualty and Surety Co.,* No. 87–2306 (D.Utah June 20, 1988) (response costs to remedy environmental injury considered "damages" as the term is used in insurance contracts); *United States Aviex Co. v. Travelers Insurance Co.,* 125 Mich.App. 579, 336 N.W.2d 838 (1983) (costs incurred by insured in response to state's demand that insured clean up contaminated water were "damages"); *Solvents Recovery Service of New England, Inc. v. Mid-*

*land Insurance Co.,* No. L–25610–83 (N.J.Super. Ct., Law Div., Nov. 17, 1986), *motion for leave to appeal filed* (App.Div.1987) (coverage should be provided for all money paid as a result of property damage for which policyholder is liable); *Broadwell Realty Services, Inc. v. Fidelity & Casualty Co. of New York,* 218 N.J.Super. 516, 528 A.2d 76 (1987) (New Jersey Department of Environmental Protection's directive to pay triple the cost of prospective clean-up constitutes "damages" within the meaning of the policy).

**5.** The distinction is further illustrated in the regulations promulgated by the Department of the Interior in connection with the calculation of damages because of injury to natural resources. The Department's summary of its rules provides:

To[j] date, most government actions have sought recovery of response costs, rather than damages. *See* Crisham and Davis, "CGL Coverage for Hazardous Substances Clean–Up," *For the Defense*, March 1988, at 22.

The type of relief sought in the *Allied* action determines Verlan's coverage obligations under the policy. As in the foregoing cases involving claims asserted under CERCLA, the *Allied* plaintiffs seek recovery for costs incurred in removing hazardous substances from a waste disposal site and for clean-up costs to be incurred in the future. In Count I, the *Allied* plaintiffs seek monies that they expended in implementing the clean-up project. In Count II they seek the "costs of response." In both counts, they request a declaration that Armitage is liable for future costs that may be incurred in the implementation of the clean-up project. Neither the allegations in the complaint nor the prayers for relief entitle the *Allied* plaintiffs to damages or justify an award of damages.

The parties elected to restrict Verlan's duty to indemnify to sums sought from Armitage "as damages" and to limit its duty to defend to suits against Armitage "seeking damages." Because the *Allied* plaintiffs do not seek damages from Armitage, Verlan is not obligated either to defend or indemnify Armitage in the *Allied* action. Based upon the clear language of the policy, therefore, there is no question of material fact that Verlan owes Armitage neither a duty to defend nor a duty to indemnify in connection with this particular claim. Absent a duty, there can be no claim for breach. Interpretation of the term "damages" is dispositive of the pending motions and it is therefore unnecessary to address the proper construction of other policy terms.

### CONCLUSION

Verlan's motion for summary judgment is granted, and declaratory judgment on the complaint is entered in favor of Verlan. Armitage's motion for partial summary judgment on Counts I, II and IV of the complaint and on the counterclaim is denied.

---

Natural resource damage assessments are not identical to response or remedial actions (clean up) addressed by the larger statutory scheme of CERCLA.... Assessments are not intended to replace response actions, which have as their primary purpose the protection of human health, but to supplement them, by providing a process for determining proper compensation to the public for injury to natural resources.
*See* 51 Fed.Reg. 27674 *et seq.* (August 1, 1986).