UNITED STATES FIDELITY AND GUARANTY COMPANY, Plaintiff-Appellant, v. SPECIALTY COATINGS COMPANY et al., Defendants-Appellees.

First District (2nd Division)   No. 1—87—3852

Opinion filed March 7, 1989.—Rehearing denied March 29, 1989.

Stephen B. Frew and Cynthia A. Meister, both of Kiesler & Berman, of Chicago, for appellant.

Kevin M. Forde and Katrina Veerhusen, both of Kevin M. Forde, Ltd., of Chicago, for appellees.

Don E. Glickman, of Rudnick & Wolfe, of Chicago (Thomas W. Brunner, James M. Johnstone, John W. Cavilia, and Wiley, Rein & Fielding, of Washington, D.C., of counsel), for *amicus curiae* Insurance Environmental Litigation Association.

James T. Price, Terry W. Schackmann, and Stephanie A. Mathews, all of Spencer, Fane, Britt & Browne, of Kansas City, Missouri, for *amicus curiae* Illinois Manufacturers' Association.

JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff, United States Fidelity and Guaranty Company (USF&G), appeals from circuit court orders denying its motion for judgment on the pleadings against defendants, Specialty Coatings Company (Coatings) and Specialty Chemical Company (Chemical) (sometimes collectively defendants) and granting defendants' motion for partial summary judgment. The issues raised for review include whether: (1) USF&G is collaterally estopped from relitigating the meaning of certain clauses of its insurance policy sold to defendants; (2) the policy's pollution exclusion clause bars coverage for defendants; (3) underlying claims amount to damages under the policy language; (4) a "potentially responsible party" (PRP) letter triggers USF&G's duty to defend; and (5) a toxic waste dump owned by third parties can be construed as "property used" by defendants under the policy. For reasons which follow, we affirm.

On June 8, 1974, USF&G issued to Coatings and on June 8, 1975, issued to Chemical comprehensive general liability insurance (CGL) policies, and both defendants became named insureds on a single CGL policy which was renewed continuously through 1987. Coatings produces industrial coatings; Chemical manufactures sealants and adhesives.

Based upon their CGL policy, defendants tendered to USF&G the defense of three separate legal claims lodged against them, for which USF&G denied coverage, declined to defend and filed an action in 1984, amended in 1985, seeking a declaration that it had no such legal obligations. USF&G moved the circuit court to enter a judgment declaring that the terms of the CGL policy did not obligate it to defend or indemnity defendants for the three separate claims, consisting of the following:

> (a) An amended complaint filed September 30, 1983, by the Attorney General of Illinois against defendants and 12 other defendants (People v. Cross), alleging, among other things, that between March 1975 and December 1978, defendants delivered, at their Illinois facility in Elk Grove, to the Cross pail and drum recyclers 55-gallon drums and five-gallon pails of industrial wastes; Cross disposed of the wastes by open dumping at its property in Kankakee County where Cross took the wastes; and a pollution hazard was thereby created, in violation of the Illinois Environmental Protection Act (Act) (Ill. Rev. Stat. 1987, ch. 111½, pars. 1012, 1021). The State sought civil penalties and an injunction requiring defendants to: (1) undertake and complete remedial action necessary to eliminate land and

water pollution at the site; (2) identify and analyze wastes at the site; (3) refrain from further violations of the act; and (4) post a performance bond.

(b) A PRP letter from the United States Environmental Protection Agency (USEPA), notifying Coatings that it was a potentially responsible party under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA) (42 U.S.C.A. §§9606(a), 9607(a) (1983)) for the costs of cleaning up the Cross site by virtue of its waste disposal agreement with Cross. Liability under CERCLA may be established irrespective of fault, knowledge or intent. Parties such as Coatings are referred to as "generators." (See *Buckeye Union Insurance Co. v. Liberty Solvents & Chemicals Co.* (1984), 17 Ohio App. 3d 127, 130-31, 477 N.E.2d 1227, 1232.) The USEPA filed no complaint against Coatings in this action, but scheduled a meeting to discuss possible settlement of the matter.

(c) A third-party action against defendants and others (Midco action or Midco complaint), wherein third-party plaintiffs, American Can Co. *et al.*, asserted the USEPA's suit against them for contributing to chemical waste pollution of surface and below-ground water and soil between 1975 and 1979 at two industrial dump sites in Gary, Indiana, designated "Midco I" and "Midco II," among other allegations. USEPA sought injunctive and other equitable relief against third-party plaintiffs and reimbursement of funds spent for investigative, response and cleanup activities at the site. (42 U.S.C.A. §§6973, 9604, 9606, 9607 (1983).) Third-party plaintiffs thereafter sought contribution for any judgments entered against them, contending defendants, among 90 others, were liable as past or present generators who contributed to or arranged for the "storage, handling, treatment, transportation or disposal" of hazardous wastes at the Midco sites. Again, under the statute, strict liability is imposed without regard to fault, knowledge or intent.

USF&G's second amended complaint requested the circuit court to enter a judgment declaring that it bore no duty to cover, defend or indemnify defendants for the three claims, because the claims: (1) alleged no "property damage" as defined by the policy; (2) alleged no "occurrence" as defined by the policy; and (3) were barred from coverage by operation of the policy's "pollution" and "property used" exclusions. Defendants' answer to the second amended complaint asserted three "first additional defenses" that USF&G failed to state a

cause of action as to each claim submitted by defendants for coverage. USF&G's reply denied each additional defense.

USF&G moved for judgment on the pleadings, to which defendants responded with a motion for partial summary judgment, seeking an adjudication that USF&G had a duty to defend them in the underlying claims. Following a hearing, the circuit court denied USF&G's motion and granted defendants' motion as to count I of the second amended complaint and, in a memorandum opinion, found that the People v. Cross claim alleged sufficient facts to establish both "property damage" and an "occurrence" under the policy. The court also concluded that neither the "pollution" nor "property used" exclusion in the policy precluded coverage for the claim submitted by defendants. The circuit court subsequently granted defendants' motion for partial summary judgment as to counts II and III of the second amended complaint; denied USF&G's motion for judgment on the pleadings; and found no just reason to delay enforcement or appeal from the orders affecting all three counts. (124 Ill. 2d R. 304(a).) This appeal followed.

## I

As a preliminary matter, defendants contend that previous litigation to which USF&G was a party conclusively decided in defendants' favor the issues of whether the policy's pollution exclusion clause bars coverage for the underlying claims and the underlying claims seek recovery for "property damage" as defined in the policy. USF&G is claimed to be collaterally estopped from relitigating those questions here. Defendants' failure to raise collateral estoppel at the trial level prevents us from now considering this theory. *Board of Education of Township High School District No. 211 v. Kusper* (1982), 92 Ill. 2d 333, 342-43, 442 N.E.2d 179.

## II

No disagreement as to material facts presented by this appeal appears; therefore, we need only determine whether, pursuant to the motions for judgment on the pleadings and for partial summary judgment, either party is entitled to prevail as a matter of law. *Katz v. American Family Insurance Co.* (1987), 163 Ill. App. 3d 549, 551, 516 N.E.2d 795; *Baker-Wendell, Inc. v. Edward M. Cohon & Associates, Ltd.* (1981), 100 Ill. App. 3d 924, 927, 427 N.E.2d 317.

An insurer's duties to defend and to indemnify are not coextensive; the duty to defend is broader and arises when the underlying complaint, compared with relevant policy provisions, alleges

facts covered or potentially covered by the contract. (*Charles H. Eichelkraut & Sons, Inc. v. Bituminous Casualty Corp.* (1988), 166 Ill. App. 3d 550, 553, 519 N.E.2d 1180; *United States Fidelity & Guaranty Co. v. Continental Casualty Co.* (1987), 153 Ill. App. 3d 185, 189, 505 N.E.2d 1072.) Only where the complaint allegations clearly exceed policy coverage may an insurer justifiably refuse to defend. (*Charles H. Eichelkraut & Sons, Inc. v. Bituminous Casualty Corp.*, 166 Ill. App. 3d at 553.) Liability insurance policy ambiguities are to be construed in context with the predominant purpose of the contract, which is to provide coverage to the insured. (*Dora Township v. Indiana Insurance Co.* (1980), 78 Ill. 2d 376, 378-79, 400 N.E.2d 921; *Illinois Central Gulf R.R. v. Continental Casualty Co.* (1985), 132 Ill. App. 3d 310, 313, 476 N.E.2d 1266, *appeal denied* (1985), 108 Ill. 2d 565.) A comprehensive general liability policy is especially susceptible to such a construction because its purchaser presumably believed that it would afford broad coverages. (*Dora Township v. Indiana Insurance Co.*, 78 Ill. 2d at 379.) Interpretation in the insured's favor is particularly appropriate if the ambiguity arises in an exclusion, since the insurer there attempts to limit the insured's coverage. *International Minerals & Chemical Corp. v. Liberty Mutual Insurance Co.* (1988), 168 Ill. App. 3d 361, 371, 522 N.E.2d 758.

USF&G initially insists that its CGL policy's pollution exclusion bars recovery for damages alleged in the underlying claims. The exclusion states in relevant part:

"This insurance does not apply:

\* \* \*

(f) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental."

In construing the pollution exclusion language against the factual background alleged in the underlying actions, that there was a discharge, dispersal, release or escape of pollutants and resulting environmental contamination must be assumed. (*International Minerals*, 168 Ill. App. 3d at 375.) That being so, we must next consider whether the exclusion applies.

Defendants contend that the policy language does not make the exclusion applicable to them since the exclusion language does not specify whether it applies only when the insured actively discharges,

dispenses, releases or causes to escape pollutants, which defendants are not charged with, or that the exclusion was intended to apply even when the polluting acts were performed by a third party, as here. They maintain that the rules of construction previously enunciated require the ambiguities to be recognized along with the resultant conclusion in favor of coverage, namely, that only where the insured engages in the actual conduct creating pollution does the exclusion apply. Because of this fact, defendants conclude, insofar as they are charged with no more than delivering the waste to third parties at their own dock for disposal, the exclusion does not apply, citing *Niagara County v. Utica Mutual Insurance Co.* (1981), 80 A.D.2d 415, 439 N.Y.S.2d 538, and *Covington Township v. Pacific Employers Insurance Co.* (M.D. Pa. 1986), 639 F. Supp. 793; see also *Thomas J. Lipton, Inc. v. Liberty Mutual Insurance Co.* (1974), 34 N.Y.2d 356, 314 N.E.2d 37, 357 N.Y.S.2d 705, *American Motorists Insurance Co. v. General Host Corp.* (D. Kan. 1987), 667 F. Supp. 1423, and *United Pacific Insurance Co. v. Van's Westlake Union, Inc.* (1983), 34 Wash. App. 708, 664 P.2d 1262.

■ It is not clear from the circumstances of this case, and from the underwriting history of the exclusionary clause to which we will later refer, that the parties intended the exclusionary clause to apply whether the insured was an active polluter or not. Certainly, those engaged in manufacturing processes would be expected to have sought other or additional insurance had they known that the mere act of engaging an independent agency such as a waste disposer in the ordinary course of having industrial wastes removed from their property would result in the denial of insurance coverage. There is nothing in the record to show whether such additional insurance was even available when defendants purchased their USF&G policy. This ambiguity must be resolved against USF&G in consonance with the authorities previously cited.

Yet another ambiguity in the policy language is identified. At bar, the circuit court found the release of toxic contaminants in the present case "sudden and accidental," in accord with *Reliance Insurance Co. v. Martin* (1984), 126 Ill. App. 3d 94, 467 N.E.2d 287, *appeal denied* (1984), 101 Ill. 2d 587. *Reliance* adopted an interpretation of "accidental" similar to the term "occurrence," as defined in the policy: "an accident, *including continuous or repeated exposure* to conditions, which results in bodily injury or property damage *neither expected nor intended* from the standpoint of the insured." (Emphasis added.) "Sudden" also was found to mean "neither expected nor intended." (See 126 Ill. App. 3d at 97-98.) *Reliance* thus rendered any

time factor inherent in the term "sudden" irrelevant and concluded that where the resultant damage was neither expected nor intended, the pollution exclusion did not apply. 126 Ill. App. 3d at 98.

Defendants urge this court to rule similarly that "sudden and accidental" means "unintentional or unexpected" only, and cite numerous decisions reaching the same conclusion based upon their findings that "sudden" is an ambiguous term which must be construed against the insurer. (*United States Fidelity & Guaranty Co. v. Thomas Solvent Co.* (W.D. Mich. 1988), 683 F. Supp. 1139, 1156-57; *New Castle County v. Hartford Accident & Indemnity Co.* (D. Del. 1987), 673 F. Supp. 1359, 1364; *United States v. Conservation Chemical Co.* (W.D. Mo. 1986), 653 F. Supp. 152, 203-04; *National Grange Mutual Insurance Co. v. Continental Casualty Insurance Co.* (S.D.N.Y. 1986), 650 F. Supp. 1404, 1410-12; *City of Northglenn v. Chevron U.S.A., Inc.* (D. Col. 1986), 634 F. Supp. 217, 222; *Broadwell Realty Services, Inc. v. Fidelity & Casualty Co.* (1987), 218 N.J. Super. 516, 534-35, 528 A.2d 76, 85; *Jackson Township Municipal Utilities Authority v. Hartford Accident & Indemnity Co.* (1982), 186 N.J. Super. 156, 165, 451 A.2d 990, 994-95; *Allstate Insurance Co. v. Klock Oil Co.* (1980), 73 A.D.2d 486, 488, 426 N.Y.S.2d 603, 605; *Buckeye Union Insurance Co. v. Liberty Solvents & Chemicals Co.*, 17 Ohio App. 3d at 134, 477 N.E.2d at 1235.

■ Defendants also maintain that the phrase "sudden and accidental" restates the definition of "occurrence," thereby negating any temporal significance implied by "sudden," relying upon *United States Fidelity & Guaranty Co. v. Thomas Solvent Co.*, 683 F. Supp. at 1157, *Pepper's Steel & Alloys, Inc. v. United States Fidelity & Guaranty Co.* (S.D. Fla. 1987), 668 F. Supp. 1541, 1549, *Fireman's Fund Insurance Cos. v. Ex-Cell-O Corp.* (E.D. Mich. 1987), 662 F. Supp. 71, 76, *Payne v. United States Fidelity & Guaranty Co.* (S.D. Fla. 1985), 625 F. Supp. 1189, 1193, *CPS Chemical Co. v. Continental Insurance Co.* (1984), 199 N.J. Super. 558, 568-69, 489 A.2d 1265, 1270, *Kipin Industries, Inc. v. American Universal Insurance Co.* (Ohio App. August 12, 1987), No. C—860658, slip op. at 4, and *United Pacific Insurance Co. v. Van's Westlake Union, Inc.*, 34 Wash. App. at 713-14, 664 P.2d at 1266.

Antipodally, USF&G places great emphasis upon the fact that *Reliance* was the only case in Illinois construing the policy language at the time of the instant decision, but since that time *International Minerals* has been decided, which disagreed with the *Reliance* policy language construction. USF&G urges that we now follow *International Minerals* and other authorities which have construed similar

language in the same way.[1] We decline to do so for reasons which follow.

We note, first, an important factual difference between the present case and *International Minerals*, namely, that the insured in the latter case was charged with active polluting conduct, unlike defendants in the case before us.[2] Further, we are persuaded that defendants and *amicus curiae* Illinois Manufacturers' Association (IMA) correctly depict the historical background of the exclusionary clause, that interpreting "sudden" to mean "abrupt" and "instantaneous" contravenes the insurance industry's announced intent in adding the pollution exclusion to the general liability policy. Prior to the insertion of the pollution exclusion in the early 1970s, "occurrence-based" coverage embraced not only the usual accident, but also exposure to conditions which continued for an unmeasured period of time. The expressed intent underpinning the insertion of the pollution exclusion clause was submitted for approval to various State insurance commissioners by representatives of the insurance industry, such as the Mutual Insurance Rating Bureau (MIRB), an association serving the insurance industry. For example, MIRB, which assisted in the draft of the exclusion endorsement, in a submission to the West Virginia Commissioner of Insurance, explained that the intent of the clause was to clarify "that the definition of occurrence excludes damages that can be said to be *expected or intended*." (Emphasis added.) Pendygraft, Plews, Clark, & Wright, *Who Pays for Environmental Damage: Recent Developments in CERCLA Liability & Insurance Coverage Litigation*, 21 Ind. L. Rev. 117, 154 (1988), citing Anderson & Luppi, *Environmental Risk Insurance: You Can Count on It*, 1987 Risk Management 68.

---

[1]See *United States Fidelity & Guaranty Co. v. Star Fire Coals, Inc.* (6th Cir. 1988), 856 F.2d 31, 35; *Great Lakes Container Corp. v. National Union Fire Insurance Co.* (1st Cir. 1984), 727 F.2d 30, 33-34; *Centennial Insurance Co. v. Lumbermens Mutual Casualty Co.* (E.D. Pa. 1987), 677 F. Supp. 342, 349; *Claussen v. Aetna Casualty & Surety Co.* (S.D. Ga. 1987), 676 F. Supp. 1571, 1580; *American Motorists Insurance Co. v. General Host Corp.* (D. Kan. 1987), 667 F. Supp. 1423, 1428; *Fischer & Porter Co. v. Liberty Mutual Insurance Co.* (E.D. Pa. 1986), 656 F. Supp. 132, 140; *Barmet of Indiana, Inc. v. Security Insurance Group* (Ind. App. 1981), 425 N.E.2d 201, 203; *Waste Management of Carolinas, Inc. v. Peerless Insurance Co.* (1986), 315 N.C. 688, 701, 340 S.E.2d 374, 383; *Transamerica Insurance Co. v. Sunnes* (1985), 77 Or. App. 136, 140, 711 P.2d 212, 214; *Techalloy Co. v. Reliance Insurance Co.* (1984), 338 Pa. Super. 1, 13, 487 A.2d 820, 826-27; *City of Milwaukee v. Allied Smelting Corp.* (1983), 117 Wis. 2d 377, 385, 344 N.W.2d 523, 527.

[2]The same distinction obtains in each of the foregoing cases except in *Centennial*; however, in that case, the issue was neither raised nor decided.

The exclusionary clause also was intended to decrease claims for pollution-related losses by providing companies with an incentive to improve manufacturing and disposal processes. The wording demonstrates, however, that any unintentional or unexpected contamination would still be covered as an "occurrence" under the policy. *Broadwell Realty Services, Inc. v. Fidelity & Casualty Co.*, 218 N.J. at 534, 528 A.2d at 84-85; see also *Kipin Industries, Inc. v. American Universal Insurance Co.* (Ohio App. August 12, 1987), No. C—860658, slip op. at 4; *United Pacific Insurance Co. v. Van's Westlake Union, Inc.*, 24 Wash. App. at 713-14, 664 P.2d at 1266; Hurwitz & Kohane, *The Love Canal—Insurance Coverage For Environmental Accidents*, 50 Ins. Couns. J. 378, 379 (1983). *Cf. Claussen v. Aetna Casualty & Surety Co.*, 676 F. Supp. at 1573.[3]

We are persuaded that, under the facts alleged in the underlying actions, the policy language, and the historical background of the exclusionary clause, the ambiguities identified by defendants must be construed against USF&G. There was no error, therefore, in the circuit court's finding that the pollution exclusion clause in USF&G's policy did not justify its declination to defend against the lawsuits involving defendants.

## III

■ USF&G argues that it owes no duty to defend the claim asserted by the USEPA in the PRP letter because the policy obligates it to defend "suits" only, and that, absent the filing of an actual complaint, no "suit" exists. The pertinent policy provision states:

> "[T]he Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such *bodily injury* or *property damage*, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by

---

[3]Articles relied upon by USF&G posit that "sudden" in the pollution exclusion must be interpreted as limiting the insured's coverage to accidents distinct in time and place, and is not a mere restatement of the "occurrence" definition. Bromwich, *Pollution & Insurance*, Risk Management, at 15, 17-18 (April 1971); Brockmeier, *Pollution—The Risk & Insurance Problem*, 12 For the Def., at 77, 79 (Sept. 1971); Pfennigstorf, *Environment, Damages & Compensation*, 1979 Am. B. Found. Res. J. 347, 440-41; Note, *The Pollution Exclusion Clause Through the Looking Glass*, 74 Geo. L.J. 1237, 1252-53 (1986).

payment of judgment or settlements."

Defendants rely upon *Fireman's Fund Insurance Cos. v. Ex-Cell-O Corp.* (662 F. Supp. at 75), which held that a "suit" "includes any effort to impose on the policyholders a liability ultimately enforceable by a court." The *Ex-Cell-O* court relied, in part, upon *United States Aviex Co. v. Travelers Insurance Co.* (1983), 125 Mich. App. 579, 586, 336 N.W.2d 838, 841, in which the court found an insurer's duty to defend where only "threats of legal action" were asserted against the insured. Presuit legal services also were identified as part of a defense against liability being claimed that made it virtually certain that a lawsuit would be filed, in *Liberty Mutual Insurance Co. v. Continental Casualty Co.* (1st Cir. 1985), 771 F.2d 579, 586.

A contrary conclusion was reached in *Detrex Chemical Industries, Inc. v. Employers Insurance* (N.D. Ohio 1987), 681 F. Supp. 438, 442-43, 446. The court there construed a provision similar to the clause in USF&G's policy and found that the word "allegations" in the clause demonstrated the traditional meaning of "suit" was intended and "suit" connotes actions brought in court. Pursuant to a motion for partial reconsideration, however, the *Detrex* court acknowledged that the issuance of a remedial order by the USEPA would trigger the insurer's duty to defend. (*Detrex*, 681 F. Supp. at 460. See *Clarke v. Fidelity & Casualty Co.* (1967), 55 Misc. 2d 327, ____, 285 N.Y.S.2d 503, 527.) In *Solo Cup Co. v. Federal Insurance Co.* (7th Cir. 1980), 619 F.2d 1178, 1188 n.7, the court found an administrative proposal by the General Services Administration that an employer settle an employment discrimination claim too "remote" and "speculative" to constitute a "suit" for insurance coverage purposes, but the court also recognized that adjudicatory proceedings before an administrative body could trigger a suit and a concomitant duty to defend.

It may be presumed that a "potentially responsible party" responding to the USEPA's letter will be requested to undertake voluntarily such actions as the agency could choose to require through an action in the court. The fortuitous choice to first seek voluntary compliance instead of court action does not eliminate the specter of potential liability for cleanup costs and damages to be incurred by defendants. Indeed, it is the very threat of available formal legal action that is expected to motivate the recipient of a PRP letter into responding acceptably to the government's suggestions.

From the foregoing we conclude that the circuit court properly determined that USF&G is obligated to defend actions contemplated by the PRP letter.

## IV

■ The next issue raised is whether the circuit court erred in ruling that the "property used" exclusion was inapplicable to the case at bar. In pertinent part, the exclusion states:

"This insurance does not apply

\* \* \*

(k) to property damage to

\*\*\*

(2) Property used by the insured."

In its memorandum opinion, the circuit court ruled that the People v. Cross complaint "does not allege that [defendants were] 'using' the damaged property. There are no allegations that [defendants] owned or conducted business operations at the site." Defendants, too, equate "use" of the subject property with "ownership" and rely upon three decisions which found insureds entitled to coverage under similar provisions because they did not "own" the tainted premises. *United States Aviex Co. v. Travelers Insurance Co.*, 125 Mich. App. at 590-91, 336 N.W.2d at 843-44; *CPS Chemical Co. v. Continental Insurance Co.* (1988), 222 N.J. Super. 175, 189, 536 A.2d 311, 318; *Broadwell Realty Services, Inc. v. Fidelity & Casualty Co.*, 218 N.J. at 532, 528 A.2d at 82-83. *Cf. Caisson Corp. v. Home Indemnity Corp.* (1986), 151 Ill. App. 3d 130, 135, 502 N.E.2d 1168; *Alderman v. Hanover Insurance Group* (1975), 169 Conn. 603, 605, 363 A.2d 1102, 1105.

Defendants were alleged to have delivered wastes to collectors at defendants' own facilities in Elk Grove; it was not claimed that defendants directed the waste disposal companies to utilize any specific method of disposal or locale for disposal. To suggest policy language interpretation that defendants "used" the Cross and Midco sites by employing the grounds for the purpose of dumping when disposal agencies, insofar as presently appears, themselves owned or selected the sites in performing their services is to create an ambiguity and then resolve it against the policyholder instead of the insurer, contrary to rules of construction.

The circuit court correctly held that the "property used" exclusion does not bar coverage.

## V

Lastly, it is maintained that the underlying claims are not entitled to USF&G's defense because none seek "damages" as that term is defined in the policy. USF&G insists that "damages" are legal

damages only and, in particular, legal damages paid to compensate for property damage. In contrast, USF&G continues, the underlying claims here seek relief only as injunctive relief, civil penalties, "response costs", or economic loss.

■ Defendants assert USF&G waived this argument by neglecting to raise it in the circuit court. The parties addressed the question of whether the underlying claims requested "damages," however, during the hearings before the court and by reference to USF&G's interpretation of the term in the July 22, 1987, memorandum opinion. There was no waiver. See *Frankenthal v. Grand Trunk Western R.R.* (1983), 120 Ill. App. 3d 409, 417, 458 N.E.2d 530.

It has been asserted by some authorities that "damages" do not include court-ordered equitable relief, only "payments to third persons when those persons have a legal claim for damages against the [i]nsured on account of injury to or destruction of property." (*Aetna Casualty & Surety Co. v. Hanna* (5th Cir. 1955), 224 F.2d 499, 503; *Verlan, Ltd. v. John L. Armitage & Co.* (N.D. Ill. 1988), 695 F. Supp. 950, 954; *Ladd Construction Co. v. Insurance Co. of North America* (1979), 73 Ill. App. 3d 43, 46-47, 391 N.E.2d 568.) Excluded, too, from coverage are the costs of complying with injunctions (*Ladd*, 73 Ill. App. 3d at 47), even where the same suits could have been brought for damages (*Continental Insurance Cos. v. Northeastern Pharmaceutical & Chemical Co.* (8th Cir. 1988), 842 F.2d 977, 986).

This reading of the term relies on the "accepted, technical" meaning of "damages"; however, it has been recognized that the term is "ambiguous" to the nonlegal community (*Continental Insurance Cos. v. Northeastern Pharmaceutical & Chemical Co.*, 842 F.2d at 985) and that such a conclusion is "arbitrary" and grounded in "outdated distinctions" (*Maryland Casualty Co. v. Armco, Inc.* (D. Md. 1986), 643 F. Supp. 430, 435).

■ Ambiguous insurance policy terms must be construed against the insurer. (*Qualls v. Country Mutual Insurance Co.*, 123 Ill. App. 3d at 833.) Whether a term is ambiguous depends not on how the legally trained mind interprets the word, but rather how the ordinary person understands it. (*Canadian Radium & Uranium Corp. v. Indemnity Insurance Co. of North America* (1952), 411 Ill. 325, 335, 104 N.E.2d 250; see also 13 J. Appleman & J. Appleman, Insurance Law & Practice 158-59 (rev. ed. 1976).) Webster's Dictionary imparts "damages" with a meaning much broader than that urged by USF&G:

> "The estimated reparation in money for detriment or injury

sustained; compensation or satisfaction imposed by law for a wrong or injury caused by a violation of a legal right." (Webster's Third New International Dictionary 571 (rev. ed. 1971).) (See also *New Castle County v. Hartford Accident & Indemnity Co.*, 673 F. Supp. at 1365.) In our opinion, an "insured ought to be able to rely on the common sense expectation that property damage within the meaning of the policy includes a claim which results in causing him to pay sums of money because his acts or omissions affected adversely the rights of third parties. While such claims might be characterized as seeking 'equitable relief,' the cleanup costs are essentially compensatory damage for injury to common property and for that reason the insurer has a duty to defend." *United States Fidelity & Guaranty Co. v. Thomas Solvent Co.*, 683 F. Supp. at 1168.

Numerous jurisdictions avoid ancient distinctions between law and equity and reject outright the limited interpretation of "damages" advanced by USF&G, favoring a broader reading to include response costs and other expenditures incurred by complying with injunctive orders. *United States Fidelity & Guaranty Co. v. Thomas Solvent Co.*, 683 F. Supp. at 1168; *Centennial Insurance Co. v. Lumbermens Mutual Casualty Co.*, 677 F. Supp. at 349-50; *New Castle County v. Hartford Accident & Indemnity Co.*, 673 F. Supp. at 1365-66; *Township of Gloucester v. Maryland Casualty Co.* (D.N.J. 1987), 668 F. Supp. 394, 399-400; *United States v. Conservation Chemical Co.* (W.D. Mo. 1986), 653 F. Supp. 152, 194; see also *Intel Corp. v. Hartford Accident & Indemnity Co.* (N.D. Cal. 1988), 692 F. Supp. 1171, 1194.

USF&G asserts that the limited construction of "damages" comports with section 107 of CERCLA, which distinguishes between recovery for cleanup costs (42 U.S.C.A. §§9607(a)(4)(A), (a)(4)(B) (1983)) and recovery of "damages for injury to, destruction of, or loss of natural resources" (42 U.S.C.A. §9607(a)(4)(C) (1983); see *Continental Insurance Cos. v. Northeastern Pharmaceutical & Chemical Co.*, 842 F.2d at 986; *Verlan*, 695 F. Supp. at 954.) The policy itself makes no such distinction, nor does the policy direct that its terms be construed with reference to the Federal statute. (See *Intel Corp. v. Hartford Accident & Indemnity Co.*, 692 F. Supp. at 1187.) The equitable relief and civil penalties sought by the State in People v. Cross thus fall within the ambit of coverage offered by the policy, as does the claim for contribution in the Midco complaint. See *Verlan*, 695 F. Supp. at 951-52.

Because defendants have not been sued for "property damage" as defined in the policy, USF&G urges it is not required to rep-

resent defendants under the policy. It further maintains that any sums payable on behalf of defendants must be "damages because of *** property damage to which this insurance applies." The policy defines property damage as:

"(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or

(2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period."

Citing *Mraz v. Canadian Universal Insurance Co.* (4th Cir. 1986), 804 F.2d 1325, and its progeny (*Cincinnati Insurance Co. v. Milliken & Co.* (4th Cir. 1988), 857 F.2d 979, 981; *Protective National Insurance Co. v. Union Oil Co.* (Cal. Super. October 29, 1987), No. C 514 463, slip op. at 3; *C.D. Spangler Construction Co. v. Industrial Crankshaft & Engineering Co.* (N.C. Super. January 4, 1988), No. 86 CVS 13349, slip op. at 2), USF&G contends that the statutory schemes pursuant to which injunctive relief, cleanup and response costs were requested in the Midco and People v. Cross claims distinguish equitable relief from relief for pure property damage. The *Mraz* court noted that sections 107(a)(4)(A) and 107(a)(4)(B) of CERCLA permit enumerated persons to be held liable for "all costs of removal or remedial action" and "any other necessary costs of response" incurred by State or Federal governments in addressing polluted sites; section 107(a)(4)(C), however, permits recovery of "damages for injury to, destruction of, or loss of natural resources." (42 U.S.C.A. §§9607(a)(4)(A) through (a)(4)(C) (1983).) Because the underlying complaint in *Mraz* did not seek relief under the latter CERCLA subsection, the court determined that the contamination at the site was not an injury for which the government claimed relief, but only a "factual predicate of the cost reimbursement claim"; and "[r]esponse costs are not themselves property damages," but rather "economic loss." *Mraz*, 804 F.2d at 1328-29. We disagree.

The conclusion reached in *Mraz* overlooks critical language contained in the policy, namely, that the insurer promises to "pay *** all sums which the insured shall become legally obligated to pay as damages *because of* *** property damage." (Emphasis added.) The plain language of the policy, therefore, demonstrates that where the genesis of the relief sought is "physical injury to tangible property" or "loss of use of tangible property," the claim seeks relief from "property damage" as defined by the contract. (*New Castle County v. Hartford Accident & Indemnity Co.*, 673 F. Supp. at 1366; *Indepen-*

*dent Petrochemical Corp. v. Aetna Casualty & Surety Co.* (D.D.C. 1986), 654 F. Supp. 1334, 1359.) Moreover, whether the insured must reimburse a party for the cost of cleaning the property or undertake measures itself to cure the injury inflicted upon the environment, the basis is the same: the amount of money spent to remedy property damage caused by the policyholder.

*Mraz* also questioned the sufficiency of State or Federal interest in the contaminated property to allege property damage. (*Mraz*, 804 F.2d at 1329.) In *Continental Insurance Cos. v. Northeastern Pharmaceutical & Chemical Co.* (8th Cir. 1987), 811 F.2d 1180, 1185-87, the court found that governments may seek redress of injury to their "quasi-sovereign" interest in the environment within their jurisdictions: "[T]he improper release of toxic wastes may cause 'property damage' not only to the actual owner of the land, water, or air, but also to state and federal governments because of their 'interest independent of and behind the titles of [their] citizens, in all the earth and air within [their] domain' " quoting *Georgia v. Tennessee Copper Co.* (1907), 206 U.S. 230, 237, 51 L. Ed. 1038, 1044, 27 S. Ct. 618, 619.

Additional proof that the policy envisioned a broad reading of "property damage" lies in the pollution exclusion. There, the contract states "[t]his insurance does not apply to bodily injury or property damage arising out of the discharge, dispersal, release or escape of *** toxic chemicals." The exclusion thus expressly recognizes that "property damage" results from environmental pollution. As noted in *United States v. Conservation Chemical Co.* (653 F. Supp. at 194), "[t]he fact that the so-called 'pollution exclusion' seeks to limit coverage for property damage to 'sudden and accidental' dispersals does not mean that damage or destruction to tangible property has not resulted from other escapes of contaminants."

The narrow construction advanced by USF&G would require this court to deny that several years of illegal dumping at the Cross and Midco sites, producing soil and groundwater contamination, constitutes "injury to tangible property," a conclusion directly contrary to several persuasively similar decisions (see *Continental Insurance Cos. v. Northeastern Pharmaceutical & Chemical Co.*, 842 F.2d at 983; *Port of Portland v. Water Quality Insurance Syndicate* (9th Cir. 1986), 796 F.2d 1188, 1194; *New Castle County v. Hartford Accident & Indemnity Co.*, 673 F. Supp. at 1366; *United States v. Conservation Chemical Co.*, 653 F. Supp. at 194; *Kutscher's Country Club Corp. v. Lincoln Insurance Co.* (1983), 119 Misc. 2d 889, ___, 465 N.Y.S.2d 136, 139) and would produce an absurd result. *Wachta v.*

*First Federal Savings & Loan Association* (1981), 103 Ill. App. 3d 174, 181, 430 N.E.2d 708.

Invoking *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 435 N.E.2d 443, USF&G next suggests that the underlying claims request relief for "economic loss." The supreme court in *Moorman* resolved an issue not presented by this appeal: whether economic loss is recoverable in tort. USF&G's reliance on *Moorman* is not readily apparent. USF&G erroneously assumes that if damage may be measured in economic terms, the damage *itself* is economic loss. (See *Independent Petrochemical Corp. v. Aetna Casualty & Surety Co.*, 654 F. Supp. at 1359; but see *Mraz*, 804 F.2d at 1329.) Other Illinois cases cited by USF&G are factually distinct from the case at bar. Each involves the manufacture or delivery of defective products or services by the insured, who then claims that the cost of remedying the products or services amounted to property damage. *E.g., CMO Graphics, Inc. v. CNA Insurance* (1983), 115 Ill. App. 3d 491, 496-97, 450 N.E.2d 860; *Sentry Insurance Co. v. S & L Home Heating Co.* (1980), 91 Ill. App. 3d 687, 690, 414 N.E.2d 1218; *Hartford Accident & Indemnity Co. v. Case Foundation Co.* (1973), 10 Ill. App. 3d 115, 124, 294 N.E.2d 7.

The circuit court did not err in concluding that defendants properly presented to USF&G claims for "property damage" as contemplated by the policy.

For the foregoing reasons, the circuit court orders granting defendants' motion for partial summary judgment and denying USF&G's motion for judgment on the pleadings are affirmed.

Affirmed.

EGAN, P.J., and BILANDIC, J., concur.