NORTHERN INSURANCE COMPANY
OF NEW YORK, Plaintiff,

v.

AARDVARK ASSOCIATES, INC. and
Insurance Company of North
America, Defendants.

Civ. A. No. 86–108E.

United States District Court,
W.D. Pennsylvania.

Aug. 29, 1990.

George I. Buckler, Meyer Darragh Buckler Bebenek Eck, Pittsburgh, Pa. and Thomas R. Brunner, Piper & Marbury, Washington, D.C., for Northern Ins. Co. of New York.

E. Max Weiss, Meadville, Pa., Jerold Oshinsky, Washington, D.C., for Aardvark Associates, Inc.

T. Warren Jones, MacDonald Illig Jones Britton, Erie, Pa., Richard Shusterman, Guy Cellucci, Barbara Zellner, White & Williams, Philadelphia, Pa., for Ins. Co. of North America.

## OPINION

COHILL, Chief Judge.

This extensive and hotly contested litigation concerns the applicability of certain comprehensive liability insurance policies in a pollution discharge context. We conclude that unambiguous policy exclusions excuse these insurers from coverage.

## FACTS

Aardvark Associates, Inc. (Aardvark) is engaged in the business of transporting industrial wastes from a production site to a disposal site. Aardvark does not produce industrial waste, nor does it operate a disposal site. It is simply a hauler.

In 1977 and 1978 Aardvark shipped an unspecified quantity of industrial wastes to two disposal sites in Ashtabula County, Ohio known as the Old Mill site and the New Lyme site. Much, if not all, of the waste transported to these sites by Aardvark was hazardous or toxic material.

In November 1981, the Environmental Protection Agency (EPA) discovered discharges of hazardous and/or toxic materials at the Old Mill disposal site. Approximately a year later the EPA discovered similar problems at the New Lyme site.

On September 30, 1983, the EPA sent a letter to Aardvark stating its findings and initial remedial efforts at the Old Mill site, and identifying Aardvark as a Potentially Responsible Party (PRP) which may be liable for costs of clean-up. In May, 1985 the EPA sent a similar letter to Aardvark concerning the New Lyme site.

Aardvark notified its liability insurance carriers, Northern Insurance Company of New York (Northern) and Insurance Company of North America (INA). Although both carriers initially undertook to investigate and, in some manner, defend against the EPA's claims, subsequently both carriers took the position that their policies do not cover Aardvark in this instance. Northern initiated this declaratory judgment action to resolve the coverage questions.

Both carriers have filed motions for summary judgment concerning the applicability of their policies. Aardvark also seeks summary judgment. The parties have submitted voluminous briefs and evidentiary material, and the matter is now ripe for disposition.

## ANALYSIS

■ Both the Northern and the INA policies contain the following pollution exclusion clause:

Exclusions

This insurance does not apply:

(f) to bodily injury or property damages arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental;

There has been a considerable volume of litigation in many varied jurisdictions over the meaning of this provision, centering on the words "sudden and accidental." Insureds have argued strenuously, and on occasion successfully, that the words "sudden and accidental" are ambiguous and must be read expansively in favor of the insured. On the other hand, numerous courts have rejected this argument and concluded that these words must be accorded their plain meaning, resulting in a restrictive scope of coverage.

This dispute has already been considered in Pennsylvania and consistently resolved by the Pennsylvania Superior Court which has had two opportunities to address the question, and several United States District Courts in this Circuit have concurred. *Lower Paxton Township v. United States Fidelity & Guaranty Co.*, 383 Pa.Super. 558, 557 A.2d 393 (1989); *Techalloy Co. v. Reliance Insurance Co.*, 338 Pa.Super. 1, 487 A.2d 820 (1984); *United States Fidelity & Guaranty Co. v. Korman Corp.*, 693 F.Supp. 253 (E.D.Pa.1988); *American Mutual Liability Insurance Co. v. Neville Chemical Co.*, 650 F.Supp. 929 (W.D.Pa. 1987); *Fischer & Porter Co. v. Liberty Mutual Insurance Co.*, 656 F.Supp. 132 (E.D.Pa.1986). These courts have uniformly concluded that:

The pollution exclusion is not ambiguous and must be accorded its plain meaning. That meaning is simply that damages resulting from a pollution discharge are covered only if the discharge itself is both sudden, meaning abrupt and lasting only a short time, and accidental, meaning unexpected.

*Lower Paxton*, 557 A.2d at 399. While decisions of the Pennsylvania Superior Court are not binding on us, we believe these Opinions are well reasoned and, if given the opportunity, would be adopted by the Pennsylvania Supreme Court.

■ Faced with this restrictive interpretation of the policy, Aardvark raises another alleged ambiguity not addressed in the cases cited above. Aardvark argues that the policy is ambiguous because it does not distinguish between "active" and "passive"

polluters, and asserts that the exclusion should only be applied to active polluters. Because Aardvark is a passive polluter, having simply hauled the waste from one site to another, it argues that it should be afforded coverage. *See, United States Fidelity & Guaranty Co. v. Specialty Coatings Co.*, 180 Ill.App.3d 378, 129 Ill.Dec. 306, 535 N.E.2d 1071 (1989).

Again, we have guidance from another court in this Circuit. In *Federal Insurance Co. v. Susquehanna Broadcasting Co.*, 727 F.Supp. 169 (M.D.Pa.1989), the Court squarely rejected *Specialty Coatings* and held:

> The pollution exclusion makes no reference at all to active polluters or passive polluters. These terms are foreign to the policies in question … In our view, the pollution exclusion broadly, but nevertheless plainly, excludes coverage for gradual pollution. Thus, under Pennsylvania law, there is no occasion or opportunity to indulge in a loose examination of the "circumstances" of the case or "the underwriting history of the exclusionary clause."

727 F.Supp. at 177. We agree. Aardvark's argument reads more into the contract of insurance than what is clearly present on its face. The reasoning in *Susquehanna* is persuasive, and we adopt it here.

Finally, Aardvark presents a large quantity of documents concerning the creation of this policy exclusion. These "drafting documents" are offered as evidence of the intended meaning and effect of this provision. However, it is axiomatic that absent an ambiguity in the contractual provisions at issue, we may not look to extrinsic evidence to aid in interpretation. As noted above, this provision is unambiguous and must be given its plain meaning. Therefore such an excursion into extrinsic evidence is unwarranted. *See, Susquehanna*, 727 F.Supp. at 177.

■ We conclude therefore that the pollution exclusion clause is applicable here, and for Aardvark to recover under these policies the discharge of pollutants must have been "sudden and accidental." We have no quarrel over the second prong: there is no indication that Aardvark intended or expected a discharge. The relevant question is whether the discharge was "sudden" within the meaning ascribed by *Techalloy* and *Lower Paxton*, i.e., was it "abrupt, and lasting only a short time."

Proving a negative is a difficult proposition, but the evidentiary material of record indicates that the discharges at issue here were not "sudden." None of the EPA documents, including the EPA Complaint against Aardvark, disclose any specific date of initial discharge or any triggering event. To the contrary, it may be inferred from the material of record that the pollution at issue here has been gradual, stretching over several years and many separate shipments of waste. Furthermore, Aardvark ultimately bears the burden of establishing this prerequisite to coverage, but it has not pleaded or advanced any proof of a particular event or occurrence which could fairly be described as sudden. *See, Fischer & Porter Co. v. Liberty Mutual Insurance Co.*, 656 F.Supp. 132, 140 (E.D.Pa.1986); *Lower Paxton*, 557 A.2d at 399.

## CONCLUSION

On the record presented, there is no disputed issue of fact and summary judgment will be entered in favor of Northern and INA on the basis of the pollution exclusion clause in the policies. Because of our holding on this issue, we need not address the several other grounds for summary judgment asserted by Northern.

An appropriate Order will issue.