**KOPPERS COMPANY, INC., Plaintiff,**

v.

**The AETNA CASUALTY AND SURETY COMPANY, the Travelers Indemnity Company, the American Home Assurance Company, Commercial Union Insurance Company, the Home Insurance Company, and Underwriters At Lloyd's of London, Defendants.**

Civ. A. No. 85–2136.

United States District Court, W.D. Pennsylvania.

Dec. 27, 1993.

Charles H. Moellenberg, Jr., Michael H. Ginsberg, J.W. Montgomery, III, Jones, Day, Reavis & Pogue, Pittsburgh, PA, Robert S. Walker, Jones, Day, Reavis & Pogue, Cleveland, OH, for plaintiff, Koppers Co., Inc.

Samuel W. Braver, Buchanan Ingersoll, Pittsburgh, PA, Scott P. Moser, Ruth Kurien, Day, Berry & Howard, Hartford, CT, for defendant, Aetna Cas.

William Herbert Howard, Cozen & O'Connor, Philadelphia, PA, Richard W. Bryan, Jackson & Campbell, Washington, DC, for The American Home Assur.

Charles B. Gibbons, Klett, Lieber, Rooney & Schorling, Pittsburgh, PA, James W. Christie, Philadelphia, PA, Carole D. Bos, Kevin J. O'Dowd, Buchanan & Bos, Grand Rapids, MI, for Commercial Union Ins.

James R. Hartline, William M. Bernhart, Thomson, Rhodes & Cowie, Pittsburgh, PA, for The Home Ins. Co.

## OPINION

COHILL, District Judge.

Before this Court is a Motion for Partial Summary Judgment (Doc. 239) filed by defendant The Aetna Casualty and Surety Company (Aetna). Other defendants in this case joined Aetna's motion. Those defendants are Jackson and Companies (joined June 30, 1993; Doc. 241), Commercial Union Insurance Company (July 21, 1993; Doc. 257), The American Home Insurance Company (August 4, 1993; Doc. 260), and The Home Insurance Company (September 9, 1993; Doc. 265) (collectively referred to as the "joining defendants"). For the reasons below, we will grant the motion with respect to Aetna and the joining defendants.

### I. Background

The complaint initiating this case was filed on September 16, 1985 by Koppers Company, Inc. (Koppers). (In 1988 Koppers was acquired by Beazer PLC, and Koppers' name was changed to Beazer. Beazer retained the environmental liabilities that are the subject of this action. Blundon Affidavit ¶ 5. For consistency, we continue to refer to the plaintiff as Koppers.) Koppers subsequently filed a First Amended Complaint on September 15, 1988; a Second Amended Complaint on December 19, 1988; and a Third Amended Complaint on February 26, 1993.

More than three decades ago, Aetna began providing primary liability indemnity insurance for Koppers. The insurance coverage was for the period January 1, 1960 to May 1, 1981. Third Amended Complaint ¶ 3. In February 1993, Koppers filed its Third Amended Complaint against five insurance companies, including Aetna, seeking coverage for claims by the U.S. Environmental Protection Agency (EPA), state enforcement agencies, and others asserting that Koppers is liable under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. § 9601 *et seq.*, and similar state laws, for environmental damage at 55 landfills and 93 plant sites throughout the United States. In response to the Third Amended Complaint, defendant Aetna brought this motion for a partial summary judgment.

The focus of this litigation, and the present motion, is whether Koppers is covered, for the period January 1, 1971 through May 1, 1981 (the "relevant period"), by the comprehensive general liability policies issued to it by Aetna (the "policies"). This question is separated into two parts: (1) was a clause that excludes coverage for certain pollution (the "pollution exclusion clause") in the policies; and (2) if so, does the exception to the exclusion, which retains coverage for "sudden and accidental" discharges, apply at the eleven landfill sites that are the subject of this motion. We begin by setting forth the general standard used in evaluating a motion for summary judgment.

### II. Standard for a Summary Judgment

A summary judgment may be granted only if the moving party shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56; *Boyle v. Governor's Veterans Outreach & Assist. Ctr.,* 925 F.2d 71, 75 (3d Cir.1991). The facts must be viewed in the light most favorable to the non-moving party. *Bechtel v. Robinson,* 886 F.2d 644, 647 (3d Cir.1989). The allegations of the party opposing the motion must be taken as true, and when these allegations conflict with those of the moving party, the former must receive "the benefit of the doubt." *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). The asserted issues of fact, however, must be "genuine." Fed.R.Civ.P. 56(c). Once the moving party has met its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475

U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see also DeLuca v. Atlantic Refining Co.*, 176 F.2d 421, 423 (2d Cir.1949) (Hand, J.), *cert. denied*, 338 U.S. 943, 70 S.Ct. 423, 94 L.Ed. 581 (1950); 10A Charles A. Wright, Arthur R. Miller, and Mary K. Kane, *Federal Practice and Procedure* § 2727 (1983). Pursuant to Fed. R.Civ.P. 56(e), the non-movant must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). And where the record "taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. As is well known, Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

With these rules in mind, we now proceed to apply the standard to Aetna's motion for partial summary judgment.

### III. *Aetna's Motion for Partial Summary Judgment*

In its present motion, Aetna (and the joining defendants) moves for summary judgment as to eleven of the fifty-five landfill sites included in the Third Amended Complaint (the "subject sites"): Lowry, Mays/Bologna, Missouri Electric Works, the New York City landfills (Pelham Bay, Bronx; Pennsylvania Avenue, Brooklyn; Fountain Avenue, Brooklyn; Edgemere, Queens; and Brookfield, Staten Island), Quanta Resources, Sharkeys, J.V. Peters, Buckeye, Butler Tunnel, M.P.I., and Review Avenue.

Before deciding whether the parties have shown or negated the existence of a genuine issue of material fact, we necessarily must set forth what are the material facts in this dispute: (1) whether the pollution exclusion clause appears in the policies, and (2) whether the discharge of pollutants at the eleven landfill sites was sudden and accidental.

In Pennsylvania, the burdens in a dispute over an insurance policy exclusion, and an exception to that exclusion, are divided as follows: the insurer has the burden of proving the exclusion; the insured has the burden of proving the exception to the exclusion. *Northern Ins. Co. v. Aardvark Associates, Inc.*, 942 F.2d 189, 194–95 (3d Cir.1991). In other words, and quite sensibly, whoever wants something—either coverage or an escape from coverage—must prove that it is legally entitled to it.

Accordingly, Aetna must show that there is no genuine issue of material fact disputing that the pollution exclusion was in the policies it issued to Koppers. If Aetna wins on this score, then Koppers must prove that there is no genuine issue that the exception to the pollution exclusion does apply to the subject sites. Applying these rules, we find that (1) Aetna has shown that there is no genuine issue of material fact refuting that the pollution exclusion is in the policies; and (2) Koppers has failed to show that there is a genuine issue of material fact refuting that the exception to the exclusion is not applicable to the subject sites. We must, therefore, grant partial summary judgment to Aetna.

A. There is no genuine issue as to whether the pollution exclusion is in the policies; it is.

The relevant time period of coverage is between January 1, 1971 to May 1, 1981. Aetna's task is to show that the pollution exclusion clause was present and in effect in each of the policies it issued to Koppers during this period. Aetna admits that it "has been unable to locate all of the policies issued to Koppers in complete form." Motion at 1 n. 1. On its face, this admission weakens Aetna's argument for summary judgment. We must remember, however, that we look to the entire record in assessing the existence of a genuine issue of material fact. And where that record "taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. We reiterate that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to

the material facts." *Id.* at 586, 106 S.Ct. at 1356.

To support its motion, Aetna asserts that the policies it issued to Koppers on and after January 1, 1971 included a standard pollution exclusion clause "in substantially the following form":

> It is agreed that the insurance does not apply to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

Motion at 2.

As evidence of the applicability of this clause, Aetna submitted an appendix to its motion comprising three volumes of photocopied insurance policies entered into between Aetna and Koppers between January 1, 1960 and May 1, 1981. We find that liability coverage, including the pollution exclusion clause, was continuous during the relevant period with the exception of a gap between March 1, 1975 and May 1, 1975. No policy was found for this two-month period. Aetna has fulfilled its burden, therefore, by showing that the pollution exclusion clause was in effect during the relevant period. The absence of a policy in the record between March 1, 1975 and May 1, 1975 does not, as Koppers contends, operate to preclude summary judgment. On the contrary, the absence of proof of any policy during that two-month period only weakens Koppers' argument, for if no policy exists, no coverage exists.

Koppers has failed to rebut the applicability of the pollution exclusion clause for the relevant period. Koppers has failed to provide affidavits or other proof, pursuant to Fed.R.Civ.P. 56(e), that the pollution exclusion clause was not included in its policies with Aetna. For example, Koppers might have produced its own copies of the relevant policies to show that the clause was absent, or might have come forward with endorse-

ments that eliminated the clause, or affidavits that claimed the clause was not present. Instead, Koppers' response was an affidavit that does not address whether the pollution exclusion clause is in the policies. *See generally* Blundon Affidavit.

Koppers further contended that Aetna "revert[s] to bare assertion" that the pollution exclusion clause is in the policies. Plaintiff's Memorandum in Opposition to Motion for Partial Summary Judgment (Memorandum in Opposition) at 10. Aetna has produced far more than bare assertion, while Koppers has failed to offer any evidence to rebut the overwhelming direct and circumstantial evidence that the pollution exclusion was in effect continuously from January 1, 1971 to May 1, 1981. Koppers' failure to rebut Aetna's evidence that the policies included the pollution exclusion clause leaves us with little basis in the record to doubt the applicability of the clause during the relevant period. Specifically, we find that a reasonable jury could not conclude that the clause was present in 122 out of 124 months of coverage, but was not included for 2 months in the middle of this coverage.

We therefore find that there is no genuine issue of material fact disputing the applicability of the pollution exclusion clause in the policies.

**B. There is no genuine issue as to whether the exception to the pollution exclusion clause applies; it does not.**

By the terms of the pollution exclusion clause, environmental damage attributable to Koppers is not compensable by Aetna unless the damage is caused by a pollutant discharge that is both "sudden and accidental." It is the burden of the insured, Koppers, to show that the discharge was "sudden and accidental." *Northern,* 942 F.2d at 195. To defeat Aetna's motion, Koppers therefore must show affirmative evidence that the discharge of pollutants at the subject landfills was sudden and accidental. *Northern Ins. Co. v. Aardvark Associates, Inc.,* 743 F.Supp. 379 (W.D.Pa.1990), *aff'd,* 942 F.2d 189 (3d Cir.1991); *Lower Paxon Twp. v. United States Fidelity & Guaranty Co.,* 383 Pa.Su-

per. 558, 557 A.2d 393, 399, *alloc. denied*, 523 Pa. 649, 567 A.2d 653 (1989). Koppers has not met this burden.

Though the meaning of the term "sudden and accidental" has been litigated for years, its meaning is now clear in Pennsylvania. (Because we are sitting in diversity, we turn to the courts of Pennsylvania to decide on its meaning. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).) Interpreting a "sudden and accidental" clause identical to the one in the Aetna–Koppers policies, the Superior Court of Pennsylvania held that pollution resulting over time from the normal business operations of the insured is excluded from coverage. *Lower Paxon*, 557 A.2d 393; *Techalloy Co. v. Reliance Ins. Co.*, 338 Pa.Super. 1, 487 A.2d 820 (1984), *alloc. denied*, 338 E.D. Allocatur Dkt. (Pa. Oct. 31, 1985).

■ This Court recently passed upon the meaning of sudden and accidental in a case strikingly similar to the present one. In *Northern Ins. Co. v. Aardvark Associates, Inc.*, 743 F.Supp. 379 (W.D.Pa.1990), *aff'd*, 942 F.2d 189 (3d Cir.1991), we agreed with the reasoning of the Pennsylvania courts in their interpretation of that phrase. *Northern*, 743 F.Supp. at 380. Those courts properly defined "sudden and accidental" as follows:

> The pollution exclusion is not ambiguous and must be accorded its plain meaning. That meaning is simply that damages resulting from a pollution discharge are covered only if the discharge itself is both sudden, meaning abrupt and lasting only a short time, and accidental, meaning unexpected.

*Id.*, quoting *Lower Paxon*, 557 A.2d at 399.

We repeat here what we said in *Northern:* While decisions of the Pennsylvania Superior Court are not binding on us, we believe these opinions interpreting "sudden and accidental" are well-reasoned and, if given the opportunity, would be adopted by the Pennsylvania Supreme Court. We are mindful that decisions of intermediate state courts are "not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *West v. American Tel. &*

*Teleg. Co.*, 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940). No such persuasive data has been brought to our attention.

■ In *Northern*, the defendant waste hauler Aardvark transported wastes during 1977–78 to two landfill sites in Ohio. *Northern*, 743 F.Supp. at 379. In 1981, the EPA discovered contamination of the soil and groundwater near the two landfills. *Id.* at 380. After the EPA filed claims against Aardvark for this contamination, Aardvark sought compensation from its liability insurance carriers. *Id.* We held then, as we do now, that an on-going discharge of landfill pollutants that eventually find their way into the surrounding environment is not sudden and accidental, and therefore the exception to the exclusion does not apply.

Logic and policy considerations counsel no other result. (We examine the policy behind the pollution exclusion clause solely as a guide in interpreting that clause.) We assume that an important policy consideration underlying environmental insurance (and CERCLA) is to encourage the mitigation and prevention of environmental damage caused by a pollutant discharge. Interpreting sudden and accidental to preclude coverage for gradual, continuous contamination furthers that policy by encouraging potential polluters to monitor closely the disposition of their contaminants. This is precisely why courts have never taken seriously the defense to liability that the "discovery" of contamination was "sudden." *See* Memorandum in Opposition at 4 n. 2. There is no valid policy reason to create an incentive for a polluter to look away and thereby avoid liability by acts of willful blindness. The pollution exclusion clause is based on an environmental policy that prefers vigilance to negligence. We doubt the insurance industry would draft a clause that functions to increase the amount and number of claims it must settle.

Koppers responds that Aetna does "not even try to address how the waste at issue here was discharged." Memorandum in Opposition at 12. But Koppers misses the point. It is Koppers, not Aetna, that must show that the exception to the exclusion applies. And it must do so by producing affir-

mative evidence that the release was sudden and accidental. Rather than do so, Koppers calls for yet more and dubious discovery on this question.

Pursuant to Fed.R.Civ.P. 56(f), we may refuse to grant summary judgment if it appears "from affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition." Rule 56(f) does not operate to prevent summary judgment in this case because Koppers merely asserts that further discovery "may reveal sudden or accidental puncturing of storage drums or site liners.... perhaps a flood, resulting in fully compensable damage to groundwater." Memorandum in Opposition at 14. These considerations, based on the record before us, are irrelevant in light of *Northern.* And even if they were relevant, Koppers has had at least eight years to discover this evidence—far more than "adequate time." *See Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. Moreover, Koppers' current stab at discovery is prohibited as an attempt to show "some metaphysical doubt" as to whether the releases were sudden and accidental, *see Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356, rather than a valid attempt to show the existence of a genuine issue of material fact, *see* Fed.R.Civ.P. 56(c).

As mentioned above, Koppers produced one affidavit to respond to the present motion. In this affidavit, the affiant, Ms. Jill M. Blundon, general counsel and vice president of Koppers, offers that Koppers "never owned, operated or controlled" the subject landfills, Blundon Affidavit ¶ 7, and that Koppers' records with respect to eight of the eleven sites are "scanty or non-existent," *id.* ¶ 9. The affiant adds that third parties are likely to have direct knowledge of how the environmental damage occurred at the sites. *Id.* ¶ 13. We note that Koppers neglected to specify which third parties at which sites would possess what knowledge to aid the trier of fact in deciding the discharge characteristics. We reject its request for two, independent reasons.

First, the discovery information that Koppers seeks is unlikely to assist in the disposition of this matter because the pollutants

have spread gradually over a long period of time rather than suddenly and "lasting only a short time." Koppers, like Aardvark in *Northern,* has admitted that its disposal at the subject landfills was a routine practice that occurred over several years. Koppers, like Aardvark in *Northern,* has not pointed out any item in the EPA notices of violation or state claims that indicates a specific release date and a release of short duration. *See Northern,* 942 F.2d at 195–96. Regulatory reports, and the sciences of physics and hydrogeology, suggest a gradual release lasting months or years at the subject sites. Nothing in the record contradicts this conclusion. This precludes a finding of sudden and accidental, at least in Pennsylvania, as a matter of law. *See also Federal Ins. Co. v. Susquehanna Broadcasting Co.,* 727 F.Supp. 169, 175–77 (M.D.Pa.1989) (pollution exclusion excludes coverage for "gradual" pollution) (dicta), *aff'd without opinion,* 928 F.2d 1131 (3d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 86, 116 L.Ed.2d 58 (1991); *Centennial Ins. Co. v. Lumbermens Mut. Cas. Co.,* 677 F.Supp. 342, 347–48 (E.D.Pa.1987) (continuous disposal of waste through a contracted hauler over a 13–month period was not "sudden"); *Fischer & Porter Co. v. Liberty Mutual Ins. Co.,* 656 F.Supp. 132, 140 (E.D.Pa.1986) (continuous dumping of toxic chemicals down drains or into other areas was not "sudden and accidental").

Nor has Koppers explained how it intends to prove through discovery that all of its drums suddenly were simultaneously punctured and the pollutants immediately leached deep into the soil and groundwater. Indeed, even if Koppers could show such an implausible event, it would still fail the "lasting only a short time" component of the sudden and accidental test. In other words, assuming what Koppers speculates, that the drums simultaneously burst, or a landfill liner suddenly ruptured, or a flood occurred, we fail to see how the migration of the pollutants deep into the surrounding soil and groundwater could be characterized as lasting only a short time. The processes of leaching and contaminant migration ordinarily take considerable time. Koppers has failed to rebut the implication from the EPA and state reports that

**396**

the contaminants gradually migrated over a long period of time at the subject landfills. (We note in passing that we find it remarkable that now, more than eight years after Koppers initiated this litigation, it has yet to depose anyone knowledgeable regarding the cause of the discharges.) In sum, Koppers has not met its burden to show a genuine issue of material fact as to the characterization of the discharge at any of the eleven sites.

Whatever the purpose of the rules of discovery, it cannot be to foster unending delay and to reward eight years of less-than-attentive discovery with another delay in the proceedings in order to clear up some "metaphysical doubt" as to events underlying a lawsuit. The purpose of discovery is to obtain information and evidence to prepare one's case; the purpose is not to inject interminable delay into a lawsuit that has already spawned more than one million pieces of paper.

### IV. *Conclusion*

The policies issued by Aetna to Koppers during the relevant period, January 1, 1971 through May 1, 1981, included the pollution exclusion clause. Koppers has failed to demonstrate the existence of a genuine issue with respect to whether the "sudden and accidental" exception to the pollution exclusion clause renders Aetna and, possibly, the joining defendants, responsible for its environmental liability. Aetna is therefore not obligated to cover Koppers for its clean-up liability at any of the eleven sites, which are the subject of this partial summary judgment motion. Because the joining defendants could be liable to Koppers only if Aetna is so liable, the motion will be granted with respect to the joining defendants as well.

For the foregoing reasons, Aetna's Motion for Partial Summary Judgment will be granted.

An appropriate order follows.

### ORDER

AND NOW, to-wit, this 27th day of December 1993, for the foregoing reasons, it is hereby ORDERED, ADJUDGED, and DE-

CREED that Aetna's Motion for Partial Summary Judgment (Doc. 239) be and hereby is GRANTED with respect to defendant Aetna and all the joining defendants: Jackson and Companies, Commercial Union Insurance Company, The American Home Insurance Company, and The Home Insurance Company.