M. Drew BROWN and Brenda A. Brown, h/w, Individually and as Guardians and Natural Parents of Ashley L. Brown and Drew C. Brown, Plaintiffs,

v.

AMERICAN MOTORISTS INSURANCE COMPANY, Defendant.

Civil Action No. 94–7505.

United States District Court, E.D. Pennsylvania.

June 28, 1996.

Gene A. Foehl, Media, PA, for Plaintiffs.

Carrie L. Okuno, Tony Zelle, Zelle & Larson, Waltham, MA, Christopher L. Troy, Hecker, Brown, Sherry & Johnson, Philadelphia, PA, for Defendant.

### MEMORANDUM & ORDER

HUYETT, District Judge.

Plaintiffs M. Drew and Brenda A. Brown and Defendant American Motorists Insurance Company have filed cross Motions for Summary Judgment. For the reasons discussed below, Plaintiffs' Motion will be **DENIED** and Defendant's will be **GRANTED**.

### I. BACKGROUND

Although the parties disagree on many of the facts surrounding Plaintiffs' claims, the material facts are not in dispute. In November of 1993, Plaintiff Brenda Brown applied a chemical waterproofing sealant to the brick exterior of Plaintiffs' home in Lansdowne, Pennsylvania. Plaintiffs allege that fumes, (Am.Compl. ¶ 11g; Pls. Answer to Def.'s First Set of Interrogs. ¶ 2; M. Brown Dep. at 64–65; B. Brown Dep. at 33–35), from the

sealant caused them intense physical discomfort, which made it necessary for them to vacate their home. They claim damage to the house and to their personal belongings, and that they incurred additional living expenses because of the inhabitability of their home. In December of 1993, Plaintiffs filed a property loss claim under their homeowners insurance policy with Defendant. Defendant denied the claim on the grounds that it fell within the policy's pollution exclusion.[1] Plaintiffs then brought this suit, claiming in five counts that Defendant breached the insurance contract and used bad faith in denying coverage.

## II. DISCUSSION

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

### A. BREACH OF INSURANCE CONTRACT

Interpretation of an insurance policy is a matter for the Court, rather than for the jury. *Allstate Ins. Co. v. Brown*, 834 F.Supp. 854, 856 (E.D.Pa.1993). Whether a particular loss is within a policy's coverage is a question of law that may be decided at the summary judgment stage. *Aetna Life & Casualty Co. v. Barthelemy*, 836 F.Supp. 231, 235 (M.D.Pa.1993), *rev'd on other grounds*, 33 F.3d 189 (3d Cir.1994). As discussed below, Plaintiffs' claim falls outside the coverage provided by the policy issued by Defendant.

#### 1. The Pollution Exclusion

■ Plaintiffs' claim for damage to their house falls squarely within the pollution exclusion clause, which was quoted above at footnote 1. The Court is required to give effect to clear and unambiguous language in an insurance policy, as that language most accurately manifests the intent of the parties. *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, No. 4329 Phila.1994, 1996 WL 338810, at *2 (Pa.Super. June 20, 1996). A term is unambiguous unless "reasonable people, considering it in the context of the entire policy, would honestly ascribe different meanings to it." *Allstate*, 834 F.Supp. at 857. The Court is not to torture policy language to create ambiguities. *St. Paul Fire & Marine Ins. Co. v. United States Fire Ins. Co.*, 655 F.2d 521, 524 (3d Cir.1981).

Plaintiffs argue that the noxious fumes that made their home unlivable were not "pollutants" under the pollution exclusion because the fumes came from an over-the-shelf product, used in an everyday activity. Essentially, Plaintiffs' position is that a common sense understanding of the term pollutants, as reasonably understood by Plaintiffs, does not include the fumes here.

■ Whether or not fumes from a household product would commonly be understood as a pollutant is not the issue, however. The term pollutant is defined in the policy to include solid, liquid and gaseous irritants and contaminants, including fumes and vapors. This definition is clear and unambiguous, and includes the fumes that Plaintiffs claim caused them sufficient irritation to make them vacate their home. *See Madison Constr. Co.*, 1996 WL 338810, at *3 (finding fumes from commonly used sealant a pollutant under similarly worded pollution exclusion). Where a term is clearly and unambiguously defined in a policy, the Court will not substitute a common definition of the term for the definition contained in the policy. *American States Ins. Co. v. Nethery*, 79 F.3d 473, 475–76 (5th Cir.1996) (refusing to substitute common meaning of "pollutant" for policy definition).[2] The policy definition of pollu-

1. In relevant part, the exclusion provides that Defendant does not insure against loss caused by "[d]ischarge, dispersal, seepage, migration, release or escape of pollutants." (Policy at 7–8.) "Pollutant" is defined as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste." (*Id.* at 8.)

2. Plaintiffs place great reliance on *Island Assocs., Inc. v. Eric Group, Inc.*, 894 F.Supp. 200 (W.D.Pa.1995) for their argument that the commonly understood definition for pollutant should be substituted for the policy definition. *Island Assocs.* is unpersuasive in that it conflicts with the Third Circuit's analysis of the proper use of an insured's reasonable expectations. *See Bensa-*

tants includes the fumes at issue here, and that definition must be given effect.

Plaintiffs next argue that the policy phrase "discharge, dispersal, seepage, migration, release or escape" is ambiguous because it was not intended to apply to the everyday activities of a homeowner; rather, Plaintiffs argue that the phrase was intended to apply only to intentional acts of polluters who cause harm to the environment. This argument is without merit. The best manifestation of the intent of the parties is the clear and unambiguous language of the policy. *Madison Constr. Co.*, 1996 WL 338810, at *2. Plaintiffs have not identified any ambiguity in the language quoted above, and none is apparent to the Court. *See id.* at *3–4 (no ambiguity in similar situation). Accordingly, the Court declines to look to, or speculate on, the intent of the parties in an attempt to avoid the plain meaning of policy language. *Id.*

It is undisputed and undisputable that the fumes seeped or migrated into the house. (*See* Am.Compl. ¶ 8; B. Brown Dep. at 35; D. Brown Dep. at 157–58; Pls. Answer to Def.'s First Set of Interrogs. ¶ 2.) Therefore, Plaintiffs' house damage claim falls within the plain language of the pollution exclusion, and outside the coverage provided by Defendant.[3]

### 2. Personal Property Coverage

Plaintiffs' homeowners policy insures against damage to personal property caused by certain enumerated perils. (Policy at 8.) The only enumerated peril invoked by Plaintiffs, and the only one even arguably implicated here, is smoke. "Smoke" is defined, somewhat circuitously, as "sudden and accidental damage from smoke." (Policy at 8.)

Smoke did not cause Plaintiffs' damages. First, "damage from smoke" does not encompass contamination from chemical fumes. *K & Lee Corp. v. Scottsdale Ins. Co.*, 769 F.Supp. 870, 873–74 (E.D.Pa.1991), *aff'd*, 953 F.2d 1380 (3d Cir.1992). Second, the damage here was not "sudden," *see Northern Ins. Co. v. Aardvark Assoc., Inc.*, 743 F.Supp. 379, 380 (W.D.Pa.1990) (defining "sudden" as "abrupt and lasting only a short time"), *aff'd*, 942 F.2d 189 (3d Cir.1991); on the contrary, it occurred gradually, over time, (B. Brown Dep. at 11; M. Brown Dep. at 157–58). Thus, any damage to Plaintiffs' personal property falls outside the coverage provided by Defendant.

### 3. Living Expenses

Coverage for additional living expenses is predicated on a covered loss that makes an insured's residence "not fit to live in." (Policy at 4.) As discussed above, the loss to Plaintiffs' residence is not a covered loss. As a result, Plaintiffs' additional living expenses are not covered under the policy.[4]

### B. BAD FAITH

To prevail on their bad faith claims, Plaintiffs would have to prove, *inter alia*, the absence of a reasonable basis for denying benefits. *Horowitz v. Federal Kemper Life Assurance Co.*, 57 F.3d 300, 307–08 (3d Cir. 1995). As Plaintiffs' claims fall outside the policy coverage, Defendant's denial of coverage was necessarily reasonable, and Plaintiffs' cannot prevail on their bad faith claims.

### III. CONCLUSION

There is no genuine issue of material fact in dispute, and Defendant is entitled to judgment as a matter of law on all of Plaintiffs' claims. Accordingly, summary judgment will

---

*lem Twp. v. International Surplus Lines Ins. Co.*, 38 F.3d 1303, 1311–12 (3d Cir.1994) (explaining that reasonable expectations of insured only defeat unambiguous policy language where insurer has created reasonable expectation of broader coverage). Moreover, the Pennsylvania Superior Court recently reaffirmed the importance of the plain meaning of policy language in a case with facts similar to the instant case. *Madison Constr. Co.*, 1996 WL 338810, at *3–4.

3. There is a limited exception to the pollution exclusion clause that applies where the "dis-

charge, dispersal, seepage, migration, release or escape [was] itself caused by [smoke]." (Policy at 8.) As discussed in the context of personal property, *infra*, smoke was not involved in Plaintiffs' claimed loss.

4. Along with property damage and additional living expenses, Plaintiffs claim damages for bodily injury and emotional distress. The policy issued by Defendant is a property policy that provides no coverage for these types of injuries.

be granted in favor of Defendant and against Plaintiffs.