KOPPERS COMPANY, INC., by its successor, BEAZER EAST, INC., Plaintiff,

v.

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, and Certain London Market Insurance Companies, Defendants.

Civil Action No. 85–2136.

United States District Court, W.D. Pennsylvania.

Feb. 23, 1998.

Charles H. Moellenberg, Jr., J.W. Montgomery, III, Jones, Day, Reavis & Pogue, Pittsburgh, PA, for Plaintiff Koppers Co., Inc.

Bernard D. Marcus, Marcus & Shapiro, Pittsburgh, PA, Martin R. Baach, Alan B. Croft, Baach, Robinson & Lewis, Washington, DC, for Defendant Underwriter's at Lloyd's London.

## OPINION

COHILL, Senior District Judge.

Before this Court is a motion for partial summary judgment and for a protective order (Doc. 1210), filed by the plaintiff in the above-captioned case. In addition to the briefs and supporting documents filed by both parties, we have had the benefit of oral argument. For the reasons set forth below, we will grant this motion in part and deny it in part.

### I. Background

The motion before us addresses Phase II of the lengthy litigation between plaintiff Koppers Company, Inc. ("Koppers") and its excess liability insurer, certain underwriters at Lloyd's, London and certain London Market insurance companies (collectively, the "London Insurers"). The background of this litigation has been detailed elsewhere,[1] and only the facts relevant to the motion before us are reiterated here.

The following facts are not in dispute. Koppers filed claims against a number of its primary and excess insurance carriers, for cleanup and response costs incurred at over one hundred plant sites and disposal sites throughout the country. The complaint alleges breach of contract, and seeks a declaratory judgment to cover future cleanup costs. The parties agreed that this litigation should proceed in phases, and selected the policies covering eighteen focus sites for trial in Phase I. Shortly before trial, Koppers reached a settlement with all of the defendant insurers except for the London Insurers. Thus, the trial was limited to twelve specific policies which provided multiple layers of occurrence-based, excess liability coverage for third-party property damage. The

policies in Phase I were issued between late 1953 and January, 1960.

Phase I was tried to a jury in April and May of 1995. That trial was limited to determining liability and damages for cleanup and response costs incurred at the focus sites through the end of 1993, and to deciding whether Koppers was entitled to a declaratory judgment for the period after 1993. Following a three-week trial, the jury returned a verdict for the plaintiffs. By special verdict, the jury found that (1) an "occurrence" had triggered coverage under the policies at issue at each location, with the exception of three of the five policy periods for the "Kelly Farm" site; and (2) that Koppers had neither expected nor intended to cause damage to third-party property at any of these sites. The jury further found that Koppers had incurred approximately $70 million dollars in costs for third-party property damage at the eighteen focus sites through the end of 1993. On post-trial motion, the judgment was reduced to about $66 million dollars. We granted a declaratory judgment for indemnification against further response costs under the twelve policies at the eighteen focus sites.

The London Insurers appealed the judgment on four grounds, and Koppers cross-appealed on the amount of pre-judgment interest. The Court of Appeals for the Third Circuit found reversible error on one of defendants' issues, and remanded with instructions to further reduce the judgment to account for the settling insurers' apportioned shares of the verdict. *Koppers Co., Inc. v. Aetna Cas. and Sur. Co.*, 98 F.3d 1440 (3d Cir.1996).[2] Molding the verdict has proved to be a protracted process, and one which will result in the judgment being further reduced by over $20 million dollars.

Phase II of this litigation is proceeding toward trial, with discovery again under the able oversight of Magistrate Judge Mitchell. The parties have agreed to stay discovery on Phase II pending disposition of this motion for partial summary judgment.

---

**1.** *Koppers Co., Inc. v. Aetna Casualty and Surity Co.*, 98 F.3d 1440 (3d Cir.1996); *Koppers Co., Inc. v. Aetna Casualty and Surity Co.*, 840 F.Supp. 390 (W.D.Pa.1993).

**2.** For reasons which are not relevant to this motion for summary judgment and which have been fully briefed by the parties, the judgment in Phase I is still being molded on remand.

## II. Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, and admissions on file fail to demonstrate a genuine issue of material fact so that the moving party is therefore entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). In other words, summary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry the burden of persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmoving party must then go beyond the pleadings and, by affidavits, depositions, answers to interrogatories, and admissions on file, designate facts showing that a genuine issue of material fact remains for trial. *Id.* at 324. The nonmoving party must establish the existence of every element necessary to its case, on which it bears the burden of proof. *Miller v. Indiana Hospital*, 843 F.2d 139, 143 (3d Cir.1988). "Facts that could alter the outcome are 'material', and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n. 1 (3d Cir.1995).

In reviewing the record on a motion for summary judgment, the evidence of the nonmovant must be believed, and the court must give the nonmoving party the benefit of all reasonable inferences. *Sempier v. Johnson & Higgins*, 45 F.3d 724, 727 (3d Cir.), *cert. denied*, 515 U.S. 1159, 115 S.Ct. 2611, 132 L.Ed.2d 854 (1995).

## III. Discussion

Koppers' motion raises two grounds for summary judgment: the doctrines of judicial estoppel and law of the case. We will address these arguments *seriatim.*

## A. Judicial Estoppel

Koppers first argues that when the London Insurers appealed the Phase I verdict to the Court of Appeals for the Third Circuit, they admitted that all of their pre–1971 policies provided coverage to Koppers, and that they are now judicially estopped from relitigating this issue in Phase II. Plaintiff contends that this admission resolves all converge issues at the remaining sites, and that only the issue of damages remains for trial. We agree with the plaintiff that the London Insurers are now estopped from asserting that these same policies were not triggered, but find that this does not resolve the ultimate issue of liability for the remaining sites.

■ The doctrine of judicial estoppel "precludes a party from assuming a position in a legal proceeding that contradicts or is inconsistent with a previously asserted position." *Delgrosso v. Spang and Co.*, 903 F.2d 234, 241 (3d Cir.), *cert. denied*, 498 U.S. 967, 111 S.Ct. 428, 112 L.Ed.2d 412 (1990); 18 Charles A. Wright, Arthur R. Miller, & Edward C. Cooper, *Federal Practice and Procedure* § 4477 (1981 & Supp.1997). Judicial estoppel is grounded in equity, and "each case must be decided upon its own particular facts and circumstances." *McNemar v. Disney Store, Inc.*, 91 F.3d 610, 617 (3d Cir. 1996), quoting *Scarano v. Cent. R.R. Co. of New Jersey*, 203 F.2d 510, 513 (3d Cir.1953).

■ Judicial estoppel "focuses on the connection between the litigant and the judicial system, and seeks to preserve the integrity of the system." *Delgrosso*, 903 F.2d at 241, citing *Oneida Motor Freight v. United Jersey Bank*, 848 F.2d 414, 419 (3d Cir.1988). It is intended to prevent parties from playing fast and loose with the courts. *Ryan Operations G.P. v. Santiam–Midwest Lumber Co.*, 81 F.3d 355, 361 (3d Cir.1996). Under the law of this Circuit, a party need not have obtained a benefit from the inconsistency in order for judicial estoppel to apply. *Id.* at 361. However, courts have held that application of the rule is especially appropriate where the party being estopped benefitted from its original position. *Id.* at 361, quoting *Delgrosso*, 903 F.2d at 242.

■ In order to determine whether judicial estoppel is appropriate in a particular case, we must apply the two-part inquiry articulated in *Ryan Operations:* (1) Is the party's present position inconsistent with a position formerly asserted? If so, (2) did the party assert either or both of the inconsistent positions in bad faith — i.e., "with intent to play fast and loose with the court?" 81 F.3d at 361.

■ Koppers argues that the London Insurers asserted a position in Phase I which they must now be judicially estopped from contradicting in Phase II. Specifically, the London Insurers appealed the Phase I judgment on the grounds that it should have been reduced to account for Koppers' settlements with the other defendant insurers. *Koppers,* 98 F.3d at 1449. In making that argument to the Court of Appeals, the London Insurers admitted that their own excess policies were triggered along with the policies issued by the settling insurers. *Id.* at 1456 n. 20; Pl.'s Ex. B at 31.

We note that the defendants' Reply Brief actually frames the issue as an admission by the plaintiff, claiming that Koppers admitted in its pretrial statement that "all of the defendant insurers' policies before 1971 'unquestionably cover' the property damage that occurred at the sites." Pl.'s Ex. B at 31. The London Insurers' brief then argues that "[a]ny attempts by Koppers to retract these judicial admissions must be rejected." *Id.* It appears to the Court that both parties have admitted that coverage was triggered.

In its Opinion, the appellate court acknowledged the defendants' admission as follows:

...the district court would not need to determine whether the non-settling pre–1971 policies were triggered because the London Insurers concede—against their interests—that all of Koppers' policies up to 1971 (the date from which pollution exclusion clauses have appeared in all policies) were triggered.

*Koppers,* 98 F.3d at 1456 citing Reply Br. at 31.

The Court of Appeals agreed with the defendants' position and reversed on the amount of damages. Accordingly, the amount of the judgment in Phase I, and, therefore, the amount the London Insurers will be required to pay, will be reduced by well over $20 million dollars. Should the London Insurers take the position in this next phase of litigation that these same policies were not triggered, such an assertion would be clearly inconsistent with the position it took (and the Court of Appeals accepted) on appeal.

Having determined that this position, if taken in Phase II, would be inconsistent, we must turn to the second inquiry required under *Ryan Operations:* whether either position involves bad faith. The London Insurers argue strenuously that judicial estoppel is inappropriate here because Koppers has failed to prove that the defendant asserted any contradictory positions in bad faith. We do not agree.

■ Not every inconsistent position gives rise to judicial estoppel, and, indeed, it is well settled that evidence of bad faith is required. Certainly, an unintentional, good faith mistake will not result in judicial estoppel. *Ryan Operations,* 81 F.3d at 362. A finding that a party has taken contradictory positions in bad faith requires at least an inference that the party acted with intent. *Id.* at 362, 364. "Asserting inconsistent positions does not trigger the application of judicial estoppel unless 'intentional self-contradiction is...used as a means of obtaining unfair advantage.'" *Id.* at 362, quoting *Scarano,* 203 F.2d at 513. Furthermore, even if a party gains a benefit from asserting a position which it later attempts to circumvent, this is not bad faith *per se. Ryan Operations,* 81 F.3d at 361. The court may, however, consider any advantage as evidence of an intent to play fast and loose with the courts. *Id.* at 361.

There is no bright-line test for bad faith in the context of judicial estoppel. However, the Third Circuit's recent opinion in *Ryan Operations* is especially helpful in directing one's attention to factors which may indicate that a party has taken an inconsistent position in bad faith. 81 F.3d 355. In that case, the plaintiff failed to disclose a potential claim against the defendant in a bankruptcy proceeding. When the plaintiff later assert-

ed its claim, the defendant raised the doctrine of judicial estoppel. After a thorough analysis, the Court of Appeals found no evidence of intentional wrongdoing and refused to apply judicial estoppel.

In reaching its decision, the Court of Appeals examined a number of different aspects of plaintiff's behavior. First, the court considered the circumstances surrounding Ryan Operations' initial position, and characterized the failure to disclose a potential claim as merely careless and inadvertent. *Id.* at 364. In other words, the plaintiff had not acted with intent. Then, distinguishing the facts before it from *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414 (3d Cir. 1988), a bankruptcy case in which the court had found bad faith and upheld the use of judicial estoppel, the court emphasized that Ryan Operations had not "deliberately asserted inconsistent positions in order to gain advantage." *Ryan Operations*, 81 F.3d at 363. Finally, and, we think significantly, the court stressed that the inconsistent position had absolutely no effect on the outcome of the litigation. *Id.* Considering all of these factors together, the court saw no evidence of bad faith and reversed the district court's application of judicial estoppel.

Applying these criteria to the facts before us leads to the conclusion that the limited use of judicial estoppel is appropriate here. The London Insurers did not inadvertently assert on appeal that their policies were triggered. On the contrary, the defendants made a deliberate decision to admit that all pre–1971 policies were triggered because that approach allowed them to argue that they should be held responsible for only a reduced share of the original verdict. This successful strategy gained them an advantage, and had a definite impact on the litigation: on remand, the amount of the verdict which the London Insurers will be ordered to pay will be substantially reduced.

Having examined the particular facts and circumstances involving the inconsistent statements in this case, we find that they support the use of judicial estoppel. The London Insurers intentionally admitted that their pre–1971 policies were triggered in order to gain a benefit in the form of a reduced

judgment, and that they are now judicially estopped from claiming in subsequent phases of this litigation that these policies were not triggered.

 However, to say that an insurance policy is triggered does not necessarily mean that the policy covers the loss. We agree with the defendants that "trigger" is not the same as a final determination of liability. When a policy is triggered, there is a threshold presumption of coverage. Under Pennsylvania law, the burden of establishing a valid insurance policy claim falls on the insured. *Riehl v. Travelers Ins. Co.*, 772 F.2d 19, 23 (3d Cir.1985). Here, though, the defendants' admission establishes that liability has been triggered for all excess policies up to 1971. This fact is no longer in dispute. However, once liability has been triggered, the insurer may still defeat liability by proving that an affirmative defense should apply. *Koppers Co., Inc. v. Aetna Cas. and Sur. Co.*, 840 F.Supp. 390, 393 (W.D.Pa.1993), citing *Northern Ins. Co. v. Aardvark Associates, Inc.*, 942 F.2d 189, 194–95 (3d Cir.1991).

 Put another way, whether liability under a policy has been triggered, and whether an affirmative defense negates that liability, are two distinct inquiries. Thus, in Phase I, the jury was required to determine both whether liability had been triggered and whether an affirmative defense defeated that liability. On special verdict, the Phase I jury first found that an occurrence of environmental contamination had taken place at each of the separate litigated sites so as to trigger coverage at each location. A finding that coverage had been triggered, however, did not complete the analysis. The special verdict then posed Question 2, which asked whether Koppers had expected or intended to cause damage to third-party property at each site. This question addressed the insurer's affirmative defense to liability. *See* Defs.' Ex. E.

This second question remains to be determined for the sites not litigated in Phase I. The London Insurers have admitted that all of their policies through January 1, 1971 were triggered, and defendants are judicially estopped from asserting otherwise in Phase

II. Plaintiff's motion for partial summary judgment will be granted on this point. However, a genuine issue of material fact remains as to whether any remaining affirmative defenses will defeat that liability, and the London Insurers are entitled to present applicable defenses to the jury. Plaintiff's motion will be denied as to this issue.

## B. Law of the Case

■ Koppers also urges this Court to grant summary judgment based on the doctrine known as "law of the case." As we have previously noted, the Phase I jury found that Koppers had neither expected nor intended to cause damage to third-party property at any of the focus sites. Defs.' Ex. E; *Koppers*, 98 F.3d at 1444. Koppers now contends that this determination is the law of the case, and must apply to all of the sites remaining in this litigation. We disagree.

■ Under the law of the case, "when a court decides upon a rule of law, that rule should continue to govern the same issues in subsequent stages in the litigation." *Deisler v. McCormack Aggregates Co.*, 54 F.3d 1074, 1087 (3d Cir.1995) (citing *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983)). The doctrine was developed "to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit." *Casey v. Planned Parenthood*, 14 F.3d 848 (3d Cir.1994) (quoting 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Rules and Practice Procedure* § 4478 (1981)). The rule applies "both to issues expressly decided by a court in prior rulings and to issues decided by necessary implication." *Bolden v. Southeastern Pennsylvania Transportation Authority*, 21 F.3d 29, 31 (3d Cir.1994). The court may depart from a prior ruling if convinced that it is clearly erroneous and would work a manifest injustice. *Arizona v. California*, 460 U.S. at 619 n. 8. Whether a ruling constitutes the law of the case is a matter within the sound discretion of the trial court. *Id.* at 618.

■ The law of the case doctrine applies only to issues actually addressed and decided at a previous stage of the litigation. Koppers correctly observes that we did not restrict testimony in Phase I only to the specific focus sites, and that we permitted evidence of corporate knowledge with respect to other sites as well as to years outside the scope of the policies at issue. The record amply supports both of these assertions. It is equally clear that the the jury clearly rejected defendants' "expected or intended" defense in Phase I. Defs.' Ex. E at 6–10. Plaintiff's argument fails, however, when it concludes that as a consequence of (1) broad, corporate-wide discovery, (2) a defense case based in part upon corporate knowledge, and (3) the jury's verdict, the issue of whether Koppers expected or intended contamination is now settled as the law of the case in plaintiff's favor for all sites and that the London Insurers are precluded from relitigating their "expected or intended" defense.[3]

Plaintiff's argument is belied by the special verdict itself. As we have previously stated, the special verdict required the jury to make specific findings only as to each of the eighteen focus sites listed on the verdict sheet. *See* discussion *supra* p. 11–12. Accordingly, the jury's determination that Koppers neither expected nor intended to cause third-party property damage applies only to those eighteen focus sites and is the law of the case only for those locations.

Indeed, the very division of this action into discrete phases for trial convinces us that the parties, as well as the Court, anticipated that, if settlement was not reached, additional sites would be tried in later phases of litigation. We find no evidence in the record to support a conclusion that Phase I was intended to determine issues of liability for any sites except the eighteen focus sites on the special verdict.

We find that a material issue of fact remains for trial as to whether Koppers expected or intended to cause property damage at the remaining sites. The law of the case doctrine does not preclude the London Insur-

---

**3.** Plaintiff's motion for partial summary judgment also argues that the law of the case doctrine precludes the London Insurers from assert-

ing the "late notice" defense in Phase II. The defendants, however, have withdrawn this defense and we need not address it further.

ers from presenting available defenses, including the expected or intended defense, to the jury in Phase II, and plaintiff's motion will be denied as to this issue.

## IV. Conclusion

Plaintiff's motion for partial summary judgment will be granted in part and denied in part in accordance with this Opinion, and plaintiff's motion for a protective order limiting discovery to the amount of damages will be denied. The parties had agreed to stay discovery pending disposition of this motion; discovery may now resume.

An appropriate Order follows.

## ORDER

AND NOW, to-wit, this 23rd day of February, 1998, for the reasons stated in the accompanying Opinion, it is hereby ORDERED, ADJUDGED, and DECREED that plaintiff's motion for partial summary judgment (Doc. 1210) be and hereby is GRANTED only insofar as it requests that the defendants be judicially estopped from claiming that coverage under the policies issued to the plaintiff through January 1, 1971 was not triggered in Phase I. In all other aspects, plaintiff's motion shall be and hereby is DENIED.

IT IS FURTHER ORDERED that plaintiff's motion for a protective order (Doc. 1210) be and hereby is DENIED.

The parties had agreed to stay discovery pending disposition of this, motion for partial summary judgment. The defendants have now filed a motion for a protective order with respect to plaintiff's Rule 30(b)(6) notice served on January 21, 1998 (Doc. 1236). In accordance with Fed.R.Civ.P. 53, Lynette Norton, Esquire is hereby appointed by the Court to serve as a Special Master for the issues raised by defendants' motion. Ms. Norton's compensation shall be agreed upon and paid by the parties.

Therefore, IT IS FURTHER ORDERED that defendants' motion (Doc. 1236) be and hereby is GRANTED in its entirety, until the parties are otherwise directed by Ms. Norton.

With the exception of the topics covered by defendants' motion, discovery in this action shall now go forward.